UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 14-cv-81453-MIDDLEBROOKS


LEADING EDGE NOVELTY, INC.,
and TSAN-YAO CHEN,

          Plaintiffs,          WEST PALM BEACH, FLORIDA
   vs.
                         FEBRUARY 25, 2015
WAL-MART STORES, INC.,
AND LAROSE INDUSTRIES, LLC,

                      Pages 1 - 53
          Defendants.
_____/



TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE



<u>APPEARANCES:</u>


For the Plaintiffs:     JOEL ROTHMAN, ESQ.
                     JEROLD IRA SCHNEIDER, ESQ.
                     Schneider Rothman IP Law Group
                     4651 N. Federal Highway
                     Boca Raton, Florida  33431


For Defts. Craig &
   Dollar General:      URY FISCHER, ESQ.
                     355 Alhambra Circle
                     Suite 1100
                     Coral Gables, Florida 33134

```
For Defts. Target
     & Spectra:          MATT NELLES, Esq.
                         Broad and Cassel
                         One Financial Plaza
                         Suite 2700
                         Fort Lauderdale, Florida 33394

                         JONATHAN P. FROEMEL, ESQ.
                         Barnes & Thornburg, LLP
                         One North Wacker Drive
                         Suite 4400
                         Chicago, Illinois 60606


For Defts. Walmart
     & Larose:           GREGORY W. HERBERT, ESQ.
                         JOHN K. KIM, ESQ.
                         RALPH W. SELITTO, JR., ESQ.
                         JAMES L. RYERSON, ESQ.
                         JOSEPH AGOSTINO, ESQ.
                         WILLIAM W. STROEVER, ESQ.
                         Greenberg Traurig, LLP
                         200 Park Avenue
                         Florham Park, New Jersey  07932


For Defts. DGL &
     Bed Bath & Beyond:  ANDREW RUSSELL KRUPPA, ESQ.
                         STEVEN M. AUVIL, ESQ.
                         Squire Patton Boggs, LLP
                         200 South Biscayne Boulevard
                         Suite 4700
                         Miami, Florida  33131



Reported By:             Diane M. Miller, RMR, CRR
                         Official United States Court Reporter
                         400 N. Miami Avenue, Room 11-2
                         Miami, FL  33128
                         (305)523-5251
                         diane_miller@flsd.uscourts.gov
```

February 25, 2015

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2          THE COURT:  Good morning.  Please be seated.

 3          This is a hearing in several patent cases.  The

 4   Plaintiff in each instance is lead Leading Edge Novelty, Inc.,

 5   and the Defendants include, in 14-81447, Bed, Bath & Beyond;

 6   81449, Target; 81450, Dollar General; 81453, Wal-Mart; 81454,

 7   TigerDirect; and 81492, Midwest Trading Group.

 8          So let's get appearances first for those in the

 9   courtroom.  I understand there are some people on the phone.

10          MR. ROTHMAN:  Yes.  For the Plaintiffs in all of the

11   cases that Your Honor just announced, Joel Rothman and Jerold

12   Schneider, Schneider Rothman IP Law Group, for the Plaintiffs,

13   Leading Edge Novelty and Tsan-Yao Chen.

14          THE COURT:  Good morning.

15          MR. SCHNEIDER:  Good morning.

16          MR. FISCHER:  Your Honor, for Craig and Dollar

17   General, Ury Fischer.

18          MR. NELLES:  Good morning, Your Honor; Matt Nelles,

19   from Broad and Cassel, on behalf of Target and Spectra, that's

20   the 81449 case.

21          I am also here on behalf of Midwest Trading, the

22   81492 case, and I will let my co-counsel introduce himself on

23   the Target case.

24          MR. FROEMEL:  Good morning, Your Honor.  Jonathan

25   Froemel with Barnes & Thornburg, representing Target and
```

February 25, 2015

```
1   Spectra.

2           THE COURT:  Good morning.

3           MR. HERBERT:  Good morning, Your Honor; Gregory

4   Herbert with Greenberg Traurig, representing Wal-Mart and

5   Larose, and with me are my colleagues, John Kim and Ralph

6   Selitto, both of whom are admitted Pro Hac Vice.

7           And on the phone, we have our colleagues, Joseph

8   Agostino, I believe also Jamie Ryerson and Willie Stroever.

9           UNIDENTIFIED SPEAKER:  That's correct.

10          THE COURT:  Okay.  Good morning.

11          MR. KRUPPA:  Good morning, Your Honor; Andy Kruppa,

12  representing DGL and Bed, Bath & Beyond, and on the telephone

13  is my parter Steve Auvil.  We are both with Spire Patton Boggs.

14          THE COURT:  Good morning.

15          MR. AUVIL:  Good morning, Your Honor.

16          THE COURT:  Okay.  Anybody else on the phone that has

17  not yet been introduced?

18          Okay.  Let's this figure out.  We have got these --

19  one, two, three, four, five -- six cases, there are probably

20  another four that have been filed that we haven't set a

21  scheduling conference yet for them, and I think there have been

22  three settlements.

23          Is that about right?

24          MR. ROTHMAN:  Yes, and probably a fourth today

25  involving the K-mart and Digital Energy Defendants, which is --
```

February 25, 2015

1  I'll give you the case number on that, Your Honor.  It's ending

2  in 81465.

3        THE COURT:  Okay.  Let me hear from those who are

4  here, starting with the Plaintiff.  Tell me something about the

5  case, where you think it is going to go.

6        I have read I had set it for trial, at least the

7  initial cases, some time, I think, in November.  You all seem

8  to say you want to do it in February.

9        Some Defendants think we ought to have a bench trial

10  first on invalidity, I'm not sure which issues you believe we

11  can resolve in that fashion.

12        I know at least one of you has filed a motion to

13  dismiss for personal jurisdiction -- or lack of personal

14  jurisdiction.

15        Let's start, and just tell me a little bit about the

16  case.  Do we really need six or ten cases, should we

17  consolidate everything?

18        Some people talk about *Markman* hearings and different

19  ones.  I'm not excited, as you might guess, at the prospect of

20  doing this 10 or 14 times, so to the degree consolidation makes

21  things more efficient, I would like to do that, even if, at the

22  end, if there are still some people standing, we break them

23  back out, but I would think there would be some efficiencies in

24  play for the parties as well.

25        So let's start with the Plaintiff.  Tell me how you

February 25, 2015

1  see this.  Are you going to settle all of the cases, and are

2  we -- should I just let you do that, or should we start moving

3  forward to try aspects of this case?

4          MR. ROTHMAN:  Your Honor, Joel Rothman again.  I

5  think you are going to find that despite the fact that there

6  are a large group of lawyers here in the courtroom and a few

7  more on the phone, that so far, there has been a remarkable

8  amount of agreement, which doesn't always happen, but has

9  happened in this case.

10         As far as consolidation for discovery purposes,

11  everyone here as agreed that consolidation makes sense; that

12  the discovery issues will be sufficiently similar in all of the

13  cases that are here, certainly, as well as some that are not;

14  that it would promote judicial economy and efficiency and a

15  just and speedy resolution to consolidate these cases under

16  Rule 42 for discovery purposes.

17         More generally, just to take a step back, the case

18  relates to a patent.  I have brought an example of the product,

19  it is hard to envision just from looking at that, but it shoots

20  water and it has got different colored LEDs, and it plays music

21  through the speakers and they dance.

22         The product is -- in terms of the patent, the patent

23  is straightforward, but all of the parts are interconnected.

24  Certainly there has been no mystery thus far about the fact

25  that there are disputes between the Plaintiff and the

February 25, 2015

1   Defendants as to the construction of claim terms, the

2   application of the patent to the Defendants' products, which

3   are substantially similar to the Plaintiffs' product.

4          There are also other issues that have been raised, as

5   mentioned in the joint case management report.  For some

6   Defendants, patent exhaustion.  The Plaintiff -- individual

7   Plaintiff, Mr. Chen, did, at one point, years ago, have a

8   license agreement with the manufacturer of my client's product

9   and at least one other of the Defendants here today, maybe

10  more, I'm not -- I don't remember exactly.

11         That license agreement was terminated and there is a

12  dispute between the Plaintiff and Defendants, who are

13  downstream purchasers, as to whether, in fact, they are

14  entitled to the benefit of that license; and therefore, can

15  assert a defense of patent exhaustion.

16         So I don't think it's, at this point, a mystery as to

17  what the case is going to deal with in terms of discovery and

18  in terms of the legal issues, and I think there has been

19  agreement as to how to proceed.

20         Certainly, the parties initially looked at the

21  scheduling of this case based upon Your Honor's order, and we

22  propose, as the Plaintiff, a schedule that would have the

23  disclosures and the pretrial events occur prior to the deadline

24  that Your Honor set.

25         We spoke to the Defendants about that, we reviewed

February 25, 2015

1  their proposed schedule, which would set the trial out three

2  months further than Your Honor set.

3        In doing so, it made sense to us, because many of the

4  deadlines were compressed and the parties certainly, including

5  the Plaintiff, would need additional time to be able to address

6  the issues that we have every expectation the Defendants will

7  raise.

8        I think you will hear something similar from the

9  Defendants to justify what doesn't happen in most of Your

10 Honor's cases, but does happen in situations where the parties

11 are in agreement that there is good reason to extend, not

12 indefinitely, but for a limited period of time, the schedule so

13 that these issues can be flushed out and so we can minimize the

14 necessity for coming before Your Honor and using your valuable

15 time.

16       With respect to settlement, certainly the Plaintiff

17 has expressed, and will express again to all of the Defendants

18 here, as well as to Defendants who are not, its interest and

19 desire to settle and its willingness to settle on reasonable

20 terms.

21       We have asked the Defendants to provide us with a

22 confidential disclosure under 408 indicating the number of

23 units that they imported or sold and that we would make a

24 demand on a per-unit basis, and the settlements have, in many

25 cases, included a reasonable royalty on a going forward basis.

1        So I have a hope that we can continue to do that with

2  the other Defendants and that we could compromise many of these

3  claims.

4        Let me address quickly a couple of issues, and then

5  I'll stop talking, and I'm sure you are going to want to hear

6  from the Defendants.

7        THE COURT:  Do most of these Defendants -- it looks

8  like most of them just sell the product.  Where do they get

9  them?  Are there manufacturers that are your competitor or what

10  is the -- I wouldn't think they would -- a lot of these are

11  pretty big retailers -- sell that many of these, I would be

12  surprised to learn.

13        MR. ROTHMAN:  It is an excellent question, Your

14  Honor.

15        So let's go back to where the products are

16  manufactured, principally in China.  In connection with the

17  patent exhaustion defense that I referred to earlier that's

18  being asserted by one or more Defendants who have, like my

19  client, purchased -- my Leading Edge client purchased the

20  product from a manufacturer in China called Atake, A-T-A-K-E.

21        Atake had, at one time years ago, and no longer has,

22  a license with Mr. Chen, and there is a dispute between them

23  that relates to other issues because they were also previously

24  licensees under Chinese patents.

25        But what has happened is both Atake, without

February 25, 2015

1  authority from the patent holder, and other unrelated

2  manufacturers have exported to the U.S. and in the U.S.,

3  Defendants who are here have imported products that the

4  Plaintiff alleges infringe.  And as a result of that

5  importation, it was and is contended by the Plaintiff that

6  these are patent infringements, as well as their distribution

7  and sale.

8          Now, in the case -- in many of these cases, we have

9  two defendants; a retailer, like a Target or a Wal-Mart, and a

10 what would be the distributor, like Larose or Spectra, to

11 provide several examples.

12         In those cases, we have named both the retailer and

13 the supplier that we are aware of because we are of the view

14 that there are also other suppliers of infringing products and

15 we have seen evidence of that, but we don't have the

16 information specifically to identify who those manufacturers or

17 distributors are.

18         They may be the same Defendants, in some cases, who

19 distributed the products to the retailer; in other cases, they

20 may be different.  But in all cases where we are -- have been

21 discussing a resolution of this, we have been discussing it in

22 an effort to resolve the whole case, not to leave Defendants

23 hanging around, for example, but to resolve the whole case,

24 hopefully with full disclosures involving maybe other potential

25 infringers so that we don't have to keep cases unnecessarily

1  hanging around on Your Honor's docket.

2         Because we know that in pretty much all of these

3  cases, if there is a retailer and a distributor name, that

4  distributor is appearing in the capacity as indemnitor of the

5  retailer, so that's clearly understood.

6         Does that help answer that question?

7         THE COURT:  Yes.  And you are not suing Atake, I take

8  it.

9         MR. ROTHMAN:  Well, at this point, I have not been

10 able to determine that Atake has an office in the United

11 States, has any representatives in the United States, has

12 sufficient contacts to be able to satisfy the personal

13 jurisdiction requirement in the United States, other than its

14 exportation from China and subsequent importation by the

15 Defendants.

16        But the exports, as I understand the situation, are

17 FOB China, which would indicate that even though they are

18 exporting to this country, that I may not be able to establish

19 personal jurisdiction simply on that fact.

20        I wish I could.  We could resolve a number of the

21 cases if I could sue them; however, that wouldn't resolve all

22 of the cases.  It would just resolve the ones involving Atake

23 being the manufacturer because there are other manufacturers,

24 as we are getting these disclosures, and we find out this

25 company X over here, that company Y over there are also

February 25, 2015

1   manufacturing them.

2          The situation -- as you can imagine, Your Honor, the

3   agreements between Mr. Chen and Atake were terminated many

4   years ago.  Those agreements required Atake to take measures to

5   pursue infringers to avoid the infringements that we are now

6   dealing with.  Those weren't done, and I wish that I could have

7   Atake here at the table.

8          As a matter of fact, I am finally having some

9   correspondence with them.  But like I said, it won't deal with

10  all of the cases.  It will only deal with -- address the cases

11  where Atake is the manufacturer.

12          THE COURT:  What is the situation with Chinese

13  patents?

14          MR. ROTHMAN:  Well, my client has three Chinese

15  patents that relate to this product, in addition to the U.S.

16  patent.  And those Chinese patents were also, at various times,

17  licensed, but the license is no longer in existence.

18          I don't have a very thorough knowledge of Chinese

19  patent law, but what I do understand is that apparently there

20  is a requirement in China that the patent be assigned for the

21  purposes of pursuing infringers, and so my client entered into

22  an agreement where he assigned the patent, for that purpose, to

23  Atake under circumstances where, upon his demand, the patent

24  would be assigned back to him.

25          That demand was made and it hasn't been assigned back

February 25, 2015

1  and that's another element of the dispute, but that relates to

2  the Chinese patents, not the U.S. patent.

3       The U.S. patent is owned by Mr. Chen individually, he

4  has never assigned it, so he is the owner of it.  There is no

5  current license to that with Atake and none of the non-Atake

6  Defendants have ever been licensed under the U.S. patent.

7       Was that helpful again?

8       THE COURT:  Yes.  Thank you.

9       MR. ROTHMAN:  Okay, good.  This gets a little

10  confusing and I know that I want to try and answer all of Your

11  Honor's questions.

12       Can I address a couple of other issues?

13       THE COURT:  Sure.

14       MR. ROTHMAN:  Great, thank you.

15       One of the Defendants you mentioned that's here,

16  Midwest, has filed a motion to dismiss for lack of personal

17  jurisdiction and Your Honor generously granted us an extension

18  as to that.

19       I think that based upon my understanding of the

20  position that they are taking and my review of their motion and

21  their case law, that we may get into a -- what was it called

22  again -- *Venetian Salami* situation under Florida law, where

23  there is a burden shifting and potential discovery occurs to

24  determine whether personal jurisdiction can be adequately

25  asserted against that Defendant.

February 25, 2015

1          I wanted to mention that because that would be

2   something that we would be willing to engage in, and engage in

3   on an expedited basis.

4          Certainly if the Midwest has a valid defense to sue

5   in the State of Florida and has no contacts whatsoever, then,

6   you know, we need to sue them in the Northern District of

7   Illinois, which we are happy to do, but would prefer to proceed

8   here.

9          So with respect to Midwest, it may be that, in the

10  very near term, the Plaintiff will be requesting to take a

11  deposition of a corporate representative in Chicago in order to

12  find out the details of their contacts, the company's contacts

13  with Florida, so that we can resolve that issue.

14         Secondly, I want to address the issue of Defendants

15  who are not here, but who are not, at this point, settling.

16  And that relates to the cases that end in 81595, Leading Edge

17  and Tsan-Yao Chen v. Forever Gifts; and the case ending in

18  81597, which is Tsan-Yao Chen alone, without Leading Edge,

19  versus Hallmark.

20         Now, Your Honor did not issue orders in those cases

21  setting a trial date and Your Honor also did not set them to

22  appear here, probably because they were filed slightly later

23  than these cases.  Let me explain what is going on there.

24         With respect to Forever Gifts, we have been in

25  settlement discussions with them.  I'm not sure where that's

1  going to go, but it seems favorable at this point.

2          With respect to Hallmark, Hallmark has filed a motion

3  to dismiss addressed to the sufficiency of the complaint, which

4  the Plaintiff will amend to address that -- those sufficiency

5  issues, and can amend easily, and we will by tomorrow, which is

6  our response date.  And I know I'm arguing slightly ex parte

7  here, but I do want to give Your Honor the benefit of the whole

8  picture.

9          The other motion they filed is a motion to transfer

10  the case to -- I forget exactly what district in Missouri, but

11  it is a district in Missouri because Hallmark, I think, is

12  based in St. Louis.

13          And that case is only Mr. Chen.  Even though it does

14  deal with the same patent, the Hallmark product is somewhat

15  different, not tremendously different, but somewhat different

16  than the product that the Defendants are accused of

17  distributing and selling.

18          The last thing I want to bring to your attention,

19  there was -- even though there was tremendous understanding and

20  agreement, and I thank Counsel for their assistance in that

21  regard, with respect to the joint scheduling report and

22  discovery plan that all of these parties here have submitted,

23  there was a slight misunderstanding, and I don't want there to

24  be any misunderstanding on the Court's part about this.

25          So what we say, in the bottom of the first page of

February 25, 2015

1  all of the scheduling reports, the very first word -- the very

2  last word on the page, The, and then turn over to the second

3  page, Plaintiffs and Defendants in this matter, in consultation

4  with the Defendants in matters to which consolidation for

5  discovery purposes is sought, see section D1 of the instant

6  report and plan, agree, et cetera.

7          That suggests that -- and I thought this was the

8  case, but it turns out not to be.  That suggests that all of

9  the parties, or at least the Defendants, have consulted with

10  the Defendants in the two cases I just mentioned, the Forever

11  Gifts case and the Hallmark case.

12          We had to get this out, we were in a rush yesterday

13  and I made an assumption that it was.  It turns out that it

14  wasn't the case.  So that there are no misimpressions, those

15  parties are not represented here and I don't think anyone is

16  making the representation that they would agree or not agree as

17  to consolidation, and so they don't come in later and say, you

18  know, You told the Judge we agreed and you never actually

19  talked to me, I want to make it clear to Your Honor that that's

20  not what we were saying.

21          And how Your Honor wishes to proceed as to those

22  cases certainly is up to Your Honor, and I think there would be

23  a great deal of reason why consolidating those cases would make

24  sense with these, but I don't want to suggest to Your Honor

25  that we have gotten their consent in any way, shape or form

```
 1  because we haven't.

 2          Okay?

 3          THE COURT:  Thank you.

 4          MR. ROTHMAN:  Thank you, Your Honor.

 5          MR. NELLES:  Good morning, Judge.

 6          THE COURT:  Good morning.

 7          MR. NELLES:  I represent, as I mentioned, the Target

 8  and Spectra Defendants, and also the Midwest Defendant.

 9          I just wanted to address the Midwest issue first.  We

10  suspected that Plaintiffs' Counsel might want to engage in

11  jurisdictional discovery first.  Certainly we are amenable to

12  that.

13          As far as Midwest is concerned, they are here today,

14  ordered to be here with the scheduling conference.  That

15  Defendant, based on their claim of lack of personal

16  jurisdiction, would request that they not be held to the same

17  schedule and that they be rescheduled after a determination is

18  made on their motion to dismiss.

19          THE COURT:  I probably won't do that.  I mean, I

20  understand the reason, but particularly if I give you this

21  additional time that people suggest they want.

22          I try to do these cases in ten months; you all are

23  asking for 12.  I'm not necessarily against doing that, if

24  everybody agrees, but I'm probably not going to extend it

25  beyond that for any of them, these two that aren't here yet
```

```
 1   either will probably -- assuming we consolidate things, we will
 2   consolidate them all, with the possible exception of that
 3   Hallmark case.
 4            It sounds like it may be a little different, but I'll
 5   look more into that later.
 6            MR. NELLES:  So from our standpoint with regard to
 7   Midwest, the briefing is --
 8            Did you file your response yet?
 9            MR. ROTHMAN:  No, but if it is a concern for Midwest
10   that they be involved and dragged through the process, when
11   Your Honor ultimately determines that there isn't jurisdiction,
12   the Plaintiff is certainly willing to agree to a very
13   compressed schedule to do the necessary discovery that we need,
14   which is if a Defendant will agree to, you know, provide it,
15   not have to deal with, for example, waiting 30 days for
16   responses to document requests, then we can take a deposition
17   in short order and get through it quite quickly.
18            I understand that -- and certainly I have been in
19   Counsel's shoes and I understand, you know, not wanting to put
20   their client through that.  So we would be agreeable to an
21   abbreviated schedule to get that done, however Your Honor
22   wishes to set it up.
23            THE COURT:  Well, I urge you to talk to each other
24   and perhaps you can agree.
25            MR. NELLES:  Yes, Judge.
```

February 25, 2015

```
1              THE COURT:  And we would expedite any decision on

2    your motion, assuming you can get through that.  But I don't

3    want to push you back on a different schedule, assuming your

4    client stays in the case.

5              MR. NELLES:  Understood, and I think we can work

6    together.

7              THE COURT:  All right.

8              MR. NELLES:  I'm just going to talk big picture in

9    terms of the Defendants, the ones that are here.

10             We looked at this from the standpoint of knowing that

11   the Court would want consolidation on as many issues as

12   possible.  It was -- we agreed that consolidation on discovery

13   would be worthwhile, both from the Court's standpoint and from

14   the parties' standpoint, so we did agree to that.

15             With respect to the issue that Your Honor raised

16   earlier, invalidity and having a bench trial on that, that was

17   a proposal that we raised with Plaintiff.  I believe that they

18   were inclined to consider that, and I think probably even

19   agreed to that.

20             We felt that rather than have separate invalidity

21   trials, that it would make sense for the Court to consider all

22   of the validity arguments at the same time.

23             THE COURT:  What are those arguments, and are they

24   all susceptible to a bench trial, or are you talking about

25   doing that by agreement?  What is the situation?
```

February 25, 2015

1          MR. NELLES:  The issues, candidly, Judge, they are

2  issues that the parties are looking into with respect to the

3  validity issues and whether there is prior art or whether this

4  is barred by Section 103 or anything of that nature.

5          We are looking into that determination now, but to

6  the extent that those are raised, we just felt it would be

7  beneficial to dispose of them all at one time.

8          I think Your Honor had asked whether there was

9  agreement on that, in terms of having a bench trial on that

10  issue.  I think that the idea was that the Defendants were

11  agreeable to having that consolidation occur on invalidity, so

12  from our position, it made sense to do it on a bench trial

13  basis because -- to sort of keep down the costs of having

14  multiple jury trials, so that's why we proposed that.

15          There are other -- the patent exhaustion issues are

16  also going to be raised as well, I suspect, in that phase.

17          With respect to the *Markman* issues that the Court

18  raised earlier as well, I'll let Mr. Kim speak to that issue

19  with regard to the *Markman*.

20          As indicated in our report, the Larose Defendant, who

21  is, I guess, associated with Wal-Mart, had proposed that there

22  be an early *Markman* hearing with respect to terms that Larose

23  felt might be case dispositive, and I'll let Mr. Kim address

24  that.

25          THE COURT:  Were these products pretty much the same

February 25, 2015

1    for all of the Defendants, and are they the same terms that we

2    are going to be deciding?  Why would we need different *Markman*

3    hearings?

4            MR. FISCHER:  Your Honor, I haven't looked at

5    everybody's product, I don't think any of us have looked at

6    each others' products, but the representation from Plaintiff,

7    who has looked at all of the products, is they are all very

8    similar.  We do believe that the same issues will come up in

9    the *Markman*.

10           The thought was to have what we call a mini *Markman*

11   early on for a very limited number of terms, one, two or three

12   terms, that we think could be dispositive of the whole cases,

13   rather than go through all of the terms that are going to be in

14   the *Markman*.

15           We do think that all of the Defendants are going to

16   have the same terms and we can consolidate the *Markman*, but we

17   just thought, as Mr. Kim will explain to the Court, that having

18   that early *Markman* initially might save time down the road.  If

19   we can dispose of those issues early on, it could dispose of

20   the entire case for everybody.

21           THE COURT:  All right.

22           MR. KIM:  Yes.  Good morning, Your Honor.

23           I'm speaking on behalf of Larose, and we feel that

24   the patent is really directed to something that is completely

25   different from the product that our client markets, and Joel

1   has brought a sample, and the patent is really directed to a

2   water tank.

3          If you read the title, it is a musical water tank and

4   we believe that there are two key dispositive terms that are

5   related to each other, and I don't know whether you had a

6   chance to look at the patent yet, but the two terms that we

7   think are case dispositive are a tank filled with at least a

8   fluid, and a heavier fluid.

9          And when the Plaintiff filed their complaint -- may I

10  provide copies of some exhibits that may be helpful in having

11  this discussion?

12         THE COURT:  Yeah, although I guess we are not in a

13  position -- I have the patent here, but I haven't tried to --

14  tell me where you are.  Are you on claim one or --

15         MR. KIM:  Yes.  I brought some exhibits to the

16  hearing here, and maybe this will be helpful.

17         May I distribute these exhibits, please?

18         THE COURT:  Sure.  Do you have an extra one for my

19  law clerk, who is seated here --

20         MR. KIM:  Absolutely.

21         THE COURT:  -- whose name is Drew Hollander, and who

22  loves patent cases.

23         MR. KIM:  I have some extra ones here, too.

24         As part of -- as part of Plaintiffs' complaint, they

25  submitted a claim chart that we can refer to as Exhibit D, and

1  claim one recites -- on page one of Exhibit D, it says, A

2  musical water tank comprising a hollow --

3          THE COURT:  Wait a minute, are you talking about B?

4          MR. KIM:  I'm sorry.  D, as in David.

5          THE COURT:  All right.  Thank you.

6          MR. KIM:  A tank filled with at least a fluid, it

7  says filled with at least a fluid.

8          Plaintiffs' position is that the liquid, if you look

9  at the picture there, that's actually a tank that's tilted

10  upside down and the arrow that points to filled with a fluid,

11  which is mineral oil.  Now, the mineral oil -- there is just a

12  tiny little bit of mineral oil in the tank.

13          Plaintiff is taking a very expansive interpretation

14  of the term filled with a fluid to mean that that's filling the

15  tank.  We don't think that's the case here, in this case.

16  Larose believes that the fluid -- a little bit of fluid does

17  not fill this tank here.

18          And then the other term that we believe is case

19  dispositive, which is related to the fluid term in the claim,

20  is towards the end of the claim, if I may direct you to page

21  eight of Exhibit D.

22          In the middle of the last row there, it says, A vein

23  wheel drives a heavier fluid upward into chamber of said

24  nozzle.

25          If I may direct you -- I'm sorry.  If I may direct

February 25, 2015

1  you to figure one of the patent, which is in Exhibit A, the

2  patent is really directed to shooting a heavier fluid through a

3  tank, which is filled with another fluid, which we think is a

4  liquid, and the heavier fluid is element number 12 on figure

5  one, and the fluid that's filling the tank is referenced as

6  reference number 11 in figure one.

7          And the way that the bubbles and streams are created

8  in this patent is by shooting a heavier fluid into the lighter

9  fluid and when the heavier liquid flows into the lighter liquid

10  and they all mix together, so they are creating bubbles by

11  shooting a heavier fluid, which is a liquid, into a fluid that

12  fills the tank.

13          So these two terms, we feel that if they are

14  construed to require two separate fluids, which we believe that

15  means a liquid, this whole case can be dismissed early on.

16          And the reason is that -- it is because according to

17  the Plaintiffs' interpretation of the claim, which says a fluid

18  up above in the claim, and a heavier fluid, it requires two

19  separate fluids, which we believe are two separate liquids.

20          Now, in the Larose patent -- I'm sorry, product,

21  there is only one liquid in the product, so we believe that the

22  patent is directed to and really requires two separate liquids,

23  and our product has only one liquid.

24          And if Your Honor is able to do a claim construction

25  early on, this whole case could be dismissed.  That's Larose's

February 25, 2015

1  reason why we are asking for an early claim construction.

2           THE COURT:  Is everybody's product in the same

3  position as Larose, or is this something that's unique to them,

4  or do you know?

5           MR. KIM:  At this point, it is just Larose's position

6  and Wal-Mart, who buys from Larose, endorses this position.

7           MR. FISCHER:  Your Honor, I believe that all of the

8  Defendants' products are in the same position, at least Dollar

9  General's is only one liquid and I believe everybody's is like

10 that, Target's as well.

11          So I think the answer to your question is yes, every

12 Defendant is in the same position.

13          THE COURT:  Do you know, is this similar for all of

14 the Defendants, this issue?

15          MR. ROTHMAN:  It is, Your Honor.  I personally cut

16 all of the Defendants' products open.  If any of the Defendants

17 would like to come to my office to see their own products, then

18 they are welcome to do that, I have them all there.

19          It sounds like Counsel for Larose, who is quite

20 eloquent and certainly understands claim construction -- but it

21 sounds like he is arguing a motion to dismiss, which they

22 didn't make.

23          They didn't make a motion to dismiss because --

24          THE COURT:  Well, I guess he is saying that the

25 construction would basically render your infringement claim

February 25, 2015

1   impossible to proceed under.

2           MR. ROTHMAN:  And I understand --

3           THE COURT:  I don't think he would have to do that by

4   a motion to dismiss, would he?

5           MR. ROTHMAN:  Well, it is interesting that the

6   exhibit that he provided you is from our complaint.  I mean,

7   Exhibit D, we actually -- this is not required, but we put a

8   claim chart in there and we put a claim chart in there because

9   we wanted to make it clear what our proposed construction is.

10          Obviously, if we agreed with Larose or any of the

11  other Defendants that they were construing this claim properly,

12  if we agreed with them, then we wouldn't be here.

13          THE COURT:  Right.  What he is asking for is an early

14  *Markman* hearing on at least these terms.  Do you agree that

15  that would be helpful or not?

16          MR. ROTHMAN:  Your Honor, I think if we are talking

17  about three terms being case dispositive, then the process of

18  briefing claim construction doesn't need to be bifurcated.  We

19  can do all of the claims at once.

20          What is being suggested here is that we hone in on

21  certain claims only, not construe the patent as a whole.  The

22  patent and the products are all interconnected, all of the

23  different parts.

24          What Counsel is asking you to do is, Let's pull out a

25  few different parts of it and construe that separately from all

February 25, 2015

1  of the other terms in the patent.

2           To the Plaintiff, that doesn't make sense.  It is

3  also contrary to claim construction principles.  One would

4  construe the entire claim together, and that would be necessary

5  in order so that Your Honor could understand why the fluid

6  that's in here, okay, the fluid fills.  A glass could be half

7  full or a glass could be full.  Filled can be less than the

8  entire volume of the container.

9           So these are issues that should be construed in the

10 context of the entire claim, through the normal process, so

11 that we -- Your Honor can make a decision based upon the law

12 and the requirements for claim construction under *Markman*, as

13 opposed to what is being suggested, which is, Let's isolate

14 certain components of it and just deal with those.  That, to

15 the Plaintiff, doesn't make a lot of sense.

16          We have agreed, all of the parties, even Larose has

17 agreed to a schedule that includes the necessary claim

18 construction contentions, the submission of evidence, and claim

19 construction briefs.  So we have a schedule that the Defendants

20 are all in agreement with as to how this can proceed.

21          What I understand Counsel for Larose to be saying is

22 they would like to take a bite of the apple as to certain terms

23 first so that if they lose those, they can still address the

24 patent claim as a whole.

25          That, to me, not only is contrary to proper claim

February 25, 2015

1    construction, but it is also contrary to the purpose of

2    everyone agreeing on a schedule, consolidating the cases,

3    having Your Honor decide these issues once.

4             THE COURT:  Well, if they are right, it would save

5    everybody time and money.

6             Now, if they are wrong, you are right, the problem is

7    you would end up with two bites at an apple and we would end up

8    with two claim construction hearings.

9             But if they are correct -- and I have no idea if they

10   are or not, we are talking about scheduling here -- then it

11   would make sense to do it.  And there are cases where a

12   single -- construction of a single claim can determine whether

13   or not there is infringement or it could be infringement or

14   not.

15            MR. ROTHMAN:  Yes, Your Honor, and in those cases,

16   the entire claim is the subject of a construction, and one term

17   that is the subject of disagreement between the parties is what

18   the determination hangs on, right.

19            That's not what we are talking about the Defendants

20   wanting to do here.  What the Defendants want to do is to pull

21   out several terms from the patent and have Your Honor construe

22   those completely out of context of the patent, completely out

23   of context with the other terms, and do that at an early stage

24   and then, subsequent to that, construe the claim again, if

25   necessary.

1            That doesn't make sense, and that isn't the way that

2    claim construction works because especially with a product

3    that, while the patent may be straightforward, the parts that

4    are specified and the steps that are specified in the patent

5    were all interconnected.

6            The fluid is in the tank and the tank has nozzles,

7    and the nozzles spray the fluid and the fluid has a weight and

8    within the -- within the bottom portion, within the platform

9    there are certain other things and everything is connected

10   together.

11           So as I understand what Counsel is suggesting is,

12   Let's take this out, even though we have agreed to, you know,

13   submit the initial infringement contentions April 1st, let's do

14   this preliminary initial round of review so that the Court can

15   take these terms out, isolate them and make some determination

16   and then, if necessary, we will go back and we will eat the

17   whole apple.

18           I don't know that there is precedent for it and I

19   don't know that it -- that it makes sense under these

20   circumstances.  And I say that the Defendant is essentially --

21   you know, they are arguing a motion to dismiss, and they

22   certainly could have argued that.

23           Because we attached our proposed claim construction,

24   they could have made that argument, and Your Honor would have

25   responded, We need to construe these claims, because that's the

February 25, 2015

30

```
 1  way that it works.
 2          THE COURT:  Well, as I hear what he said, that's what
 3  he is suggesting.  I don't know of anything that would preclude
 4  you from staging a *Markman* hearing.
 5          Sometimes people wait until summary judgment to do
 6  *Markman* hearings.  If you want to advance it for some reason,
 7  assuming you could isolate and look at a term, and that's a big
 8  assumption.  You are saying that you can't, that you have to
 9  look at everything together; maybe you do, maybe you don't.
10          I'm not going to decide that today, I think maybe you
11  all should discuss it to find out whether all of the Defendants
12  are in agreement as to that, and all of the products because I
13  don't want to do something -- take an empty step.
14          I suggest you talk to each other.  If you can agree,
15  fine.  If you can't, give me something with both sides'
16  position.
17          I would like to hopefully have the Defendants'
18  position and the Plaintiffs' position as to whether this early
19  hearing on certain of the claims makes sense in the case, and
20  then we will decide.
21          MR. KIM:  Your Honor, if I may, Plaintiffs' Counsel
22  has characterized that the two terms that are related basically
23  is construing one -- in our view, construing one single claim
24  and that really -- the question is whether the claim requires
25  two separate fluids or not because the claim -- fluids or
```

February 25, 2015

1  liquids, and the Plaintiffs' vision is that even though there

2  is two separate fluids recited in the claim, the claim only

3  requires one single fluid.

4          THE COURT:  Well, as I understood, you also had fill.

5          MR. KIM:  Yeah.

6          THE COURT:  Fill could be -- I can see fill doesn't

7  necessarily mean 100 percent.  You are saying that a small

8  amount of fluid can be fill.

9          MR. KIM:  If I may borrow Plaintiffs' example.

10 Basically, this is the -- as far as the Larose product is

11 concerned, this -- I can make a representation as far as liquid

12 is concerned, the amount of liquid is very similar to

13 Plaintiffs' product.

14         So if you have this product here, you don't even see

15 fluid being filled.  Only after you tilt this like this do you

16 see the fluid.

17         Now, Larose's position is that this cannot be

18 construed as filling the entire tank here.  It doesn't even

19 fill 50 percent of the tank here, so if that term is construed

20 early on, I think that can be case dispositive and in

21 conjunction with that, a heavier fluid.

22         A heavier fluid means that there has got to be

23 another fluid in the system; you can't have a heavier fluid in

24 isolation.  So as far as Larose is concerned, the patent is

25 very specific and it's a very simple term.

1          This is not rocket science, where you need, you know,
2  experts testifying and all of that.  I think this can be
3  decided very early.
4          Plaintiffs' Counsel says that we are picking these
5  out in isolation.  We are not really picking this out in
6  isolation.  Why should -- if this case can be dismissed early
7  on, why should the parties go through -- you know, spend
8  hundreds of thousands of dollars and go through discovery and
9  do the *Markman* hearing at the end of the case, where we can do
10 an early *Markman* hearing on this case and have this case
11 dismissed?
12          You can probably dismiss this entire case in a couple
13 months, if we are correct.  So that will be our Larose client's
14 position.
15          And in addition, Your Honor has ruled there is a
16 precedent in this District where Your Honor has, in fact,
17 wanted to proceed on an early *Markman* hearing.  This is the
18 *Sony* case, *Rothschild Sony* case, which was heard only about 7
19 months ago, and in that case, it's very similar to what we are
20 asking here.
21          We would like an early *Markman* hearing on a case
22 dispositive one or two terms, and then have if we -- if the
23 case cannot be decided on those terms, then have a full *Markman*
24 hearing at the end of the case.  And in the *Sony* case, I
25 believe Your Honor was very amenable to the concept.

February 25, 2015

1          Thank you, Your Honor.

2          THE COURT:  Well, I'm open to the concept, but as I

3    say, I need to know -- you all need to decide whether all of

4    the Defendants agree that that works for everybody's product,

5    and then talk to the Plaintiff, see if you agree or don't

6    agree, and then tell me something about the two positions.

7          How long do you think it will take you to do that?  I

8    don't think that affects the other scheduling of the *Markman*

9    hearing.  The question is whether we do a preliminary or I

10   guess bifurcate *the Markman* and deal with these certain terms

11   early, as I see what you are proposing.

12         MR. KIM:  I think the whole briefing can be done in

13   about a month or so, a month or two months.  And as far as the

14   schedule is concerned, we agree -- you know, Larose agrees to

15   the schedule in this case, but subject to having an early

16   *Markman* hearing, and I think we can -- what we can do is, if

17   Your Honor is amenable to this, that we can have a *Markman*

18   starting immediately.

19         And obviously, the Defendants' preference would be to

20   stay the discovery pending this, but I understand that Your

21   Honor wants to move the case, so we can have all of the other

22   discovery proceed, while having an early *Markman* hearing.

23         THE COURT:  Okay.  I'm open to it and so I would

24   invite you to, as I say, figure out if all of the Defendants

25   are on the same page, talk to the Plaintiffs, and either file

```
 1   an agreed -- tell me you are in agreement or you are not and if
 2   you are not, tell me what each of your positions are and I'll
 3   schedule it.
 4          I guess if I think that we can dispose of the case by
 5   resolution of a few terms and that the interconnectedness is
 6   not significant, I'll probably do it, is my reaction.
 7          MR. KIM:  Thank you, Your Honor.
 8          MR. NELLES:  I think Your Honor was asking how long
 9   to get that to you, and I think that can be done in pretty
10   short order.
11          THE COURT:  Good.
12          MR. NELLES:  We can propose our position on it, give
13   it to Plaintiff and then probably in a week to ten days, we
14   could probably have that filed.
15          Right?
16          MR. KIM:  Yes.
17          MR. ROTHMAN:  Ten days, Your Honor.
18          THE COURT:  I'm not inclined -- especially if some of
19   you all are settling, I'm not inclined to stay everything for
20   that.
21          I may move up part of the Markman, and you have got
22   your jurisdictional issue, which I also invite you to decide.
23          I guess I'll go along with your February date.
24          And consolidation, were you in agreement on all of
25   the other -- on all of the other issues in terms of scheduling?
```

February 25, 2015

1          MR. ROTHMAN:  I think we were, with the exception of

2   certain limitations regarding discovery.

3          What had been proposed with respect to

4   interrogatories was acceptable.  With respect to the requests

5   for production, the Defendants proposed that a single set would

6   be served, which is acceptable, but that the Defendants would

7   each be entitled to an unlimited number of additional separate

8   requests, and the Plaintiff asked that those be limited to just

9   ten.

10          The request for admissions -- yeah, ten per

11   Defendant.

12          The request for admissions, similarly, the parties

13   have agreed that there will be a single common set of request

14   for admissions.  The Defendants asked for each an unlimited

15   number of requests and the Plaintiffs' request is that each

16   Defendant be limited to ten, rather than having to answer an

17   unlimited number of additional requests.

18          But other than that, I believe that we have agreement

19   as to all of the other issues.

20          THE COURT:  All right.  Now, why couldn't we do this

21   in one trial, if we had to?  Assuming everybody stuck it out,

22   what would be the problem?  Why do I need to set separate

23   trials?

24          MR. FROEMEL:  Your Honor, John Froemel on behalf of

25   Target and Spectra.

```
1              There are specific issues with respect to damages

2   that are independent with respect to each Defendant, as well as

3   while we have heard a representation that the products are

4   similar, but there are still some specific differences between

5   the products, so having one trial on infringement, you would be

6   dealing with five or six products that, while similar, are not

7   identical.

8              MR. FISCHER:  Your Honor, we also believe that -- I

9   believe it has been alleged that the infringement is willful

10  and when you have multiple Defendants, we don't believe that it

11  would be fair if one Defendant -- if there is evidence of

12  willfulness, that the other Defendants sit together with that

13  Defendant and be potentially prejudiced by that.

14             Because at this point, we don't really know and

15  that's why we would prefer to have separate trials, because of

16  different issues.

17             THE COURT:  What do you think?

18             MR. ROTHMAN:  Your Honor, all of the Defendants'

19  products are identical in terms of how they infringe, how they

20  are put together.

21             Some are bigger, some are a little smaller, some have

22  Bluetooth, some don't.  If they are identical, there is no

23  reason why they couldn't be tried together.

24             I understand Counsel's comments regarding

25  willfulness, it is a good point.  At this point, if it turns
```

1   out there's no basis for a willfulness claim, then that issue

2   goes away.

3          At this point, it is my understanding that there is

4   willfulness, certainly Your Honor can bifurcate that issue.

5   And earlier, there was a request by the Defendants, Well, let's

6   just bring all of the invalidity issues together and have a

7   bench trial.

8          It seems to me that if we are bringing all of those

9   issues together -- and my client has not waived a jury trial at

10  this point, and I haven't had a chance to speak to them.  It

11  has been Chinese New Year and everyone has been off for the

12  last week.  Obviously, I need to be able to consult with my

13  client.

14         Assuming that my client does not waive a jury trial,

15  which at this point they do not waive, then what the Defendants

16  have already said is, Well, at least as to invalidity and the

17  other, we will have one big trial, so why not have one big

18  trial, especially if all of the issues are the same.

19         MR. KIM:  Your Honor, on behalf of Larose, Larose

20  buys from Atake, and we have a specific patent exhaustion issue

21  that needs to be tried separately.

22         I don't know whether all of the Defendants in here

23  have that defense, but to the extent that we are the only one

24  who has that defense, we need to have a separate trial.

25         THE COURT:  Is that susceptible to a jury

```
1    determination, the exhaustion?
2            MR. KIM:  I believe so.
3            THE COURT:  What would not be, as you see it, in
4    terms of your invalidity positions, and are they significant?
5            MR. KIM:  I'm sorry?
6            THE COURT:  In at least one instance, where it seemed
7    like the nonjury issues were a significant part of the case, we
8    did bifurcate it and did those first, to basically spare the
9    jury those issues.
10           And so if it's that kind of situation, I'm amenable
11   to it.  If it is -- if we are not really going to dispose of
12   very much, I'm not.  So I can't tell at this point, from what
13   you all have told me.
14           And certainly if there was an agreement that we do
15   the invalidity by a bench trial first, I would do that, rather
16   than bring a jury in, particularly if we end up with one trial,
17   I would want to minimize the time we are going to ask the jury
18   to spend with anything I could do.
19           At this point, I'm going to set it for one trial, but
20   with the caveat that as things progress, we may, as we move
21   towards trial, sever Defendants.  I'll have a better idea then
22   whether there really are individual issues.
23           The separate damage issue is not -- doesn't seem very
24   persuasive to me now.  The willfulness might, if there is a
25   willfulness claim and if the products are really different,
```

February 25, 2015

1   that would have a bearing.

2          If the products are the same and the only issue is

3   damages, I don't see why we couldn't do it in one trial.

4          Okay.  Anything else we need to do today?

5          MR. SELITTO:  Your Honor, Ralph Selitto, representing

6   Larose and Wal-Mart.

7          I did want to, if it pleases the Court, make some

8   brief prefatory comments about this patent exhaustion theory

9   and the underlying license agreements that pertain to that

10  defense.

11          And what I did want to indicate is that there are not

12  one or two agreements.  It appears, and we have copies of the

13  agreements, we have certified translations of the agreements,

14  there could be as many as five relevant agreements and one of

15  the agreements has a term that ran through December 1st, 2014.

16          And I just want the record to be clear, because

17  Mr. Rothman is taking the position that the agreements were

18  terminated, I think he said years ago.

19          We have repeatedly asked Plaintiffs' Counsel to

20  provide us copies of evidence showing that there has been a

21  termination notice on these multiple agreements or that there

22  has been a reversion and reassignment of the two Chinese

23  patents in question, which I believe, if we did a search at the

24  Chinese patent office today, Your Honor, it would reflect that

25  Atake is, in fact, the owner of those patents.

February 25, 2015

```
 1              So as far as -- from what we have been able to

 2    determine, we think at a point in time that the complaint was

 3    filed, at least with regard to Larose and Wal-Mart, it is very

 4    questionable as to who owned at least the Chinese patents from

 5    the standpoint of the patent exhaustion theory, so I just

 6    wanted to make that point, Your Honor.

 7              THE COURT:  How will that impact, if at all, the

 8    schedule that we are talking about today?

 9              MR. SELITTO:  I don't think it will impact at all,

10    except to the extent that the contracts are written in Chinese,

11    they are to be governed according to the Chinese law according

12    to the contracts.

13              Atake is a foreign party, we are not sure how

14    cooperative they are going to be with regard to discovery and

15    producing somebody for deposition, and so there will be an

16    element of foreign law and construction of the foreign law to

17    be able to interpret these contracts, which, based on the

18    translations that I have seen, are not necessarily comparable

19    to American standards.

20              THE COURT:  Do you know if Atake has ever

21    participated in any American proceedings?

22              MR. SELITTO:  When Your Honor says proceedings, I

23    assume you are speaking of lawsuits.

24              THE COURT:  Right.

25              MR. SELITTO:  Not to my knowledge, Your Honor.  We
```

February 25, 2015

```
1    don't represent Atake, but we have been in communications with
2    their U.S. Counsel, and they have provided us --
3              THE COURT:  So they do have lawyers.
4              MR. SELITTO:  Excuse me?
5              THE COURT:  They do have lawyers here, Atake does?
6              MR. SELITTO:  Yes.
7              THE COURT:  But you don't know if they have ever
8    appeared or not.
9              MR. SELITTO:  John, do you know?  I'm not aware.
10             MR. KIM:  Your Honor, not to my knowledge.
11             THE COURT:  Okay.  Well, that will certainly add a
12   complication, won't it?
13             MR. SELITTO:  That's just why I wanted to clarify
14   that for the Court's purposes.
15             THE COURT:  Okay.  Anything else?
16             I have agreed to your February date.  You all go talk
17   about this motion to dismiss and try to agree on some
18   discovery, if it is necessary, and tell me when -- if you all
19   work together -- let me tell you, if you are not changing
20   dispositive deadlines or trial dates, if you agree, I'll go
21   along with it, and so those kinds of dates I'm not going to
22   hold you to.  As long as you participate and cooperate with
23   each other, I will agree to any of those changes.
24             I don't know if you have any real confidential data
25   in this case.  I agree to limitations on disclosure during
```

February 25, 2015

1  discovery, but not trial, they are not papers you file with the

2  Court.

3          The fact that you have agreed to the confidentiality

4  of the document doesn't affect me when it comes to whether or

5  not it is sealed if you file a motion in court or have any kind

6  of proceeding.  On those kinds of things, basically without a

7  strong showing, I'm unlikely to seal anything.

8          Anything else you all want to talk about in terms of

9  our approach?

10         Some of you, I have had before me in other patent

11 cases; some I haven't, but it looks like we have good lawyers

12 in the case and hopefully we will move forward well.

13         MR. ROTHMAN:  Not from the Plaintiff, Your Honor.

14         MR. FISCHER:  Your Honor, I just want to comment, I

15 don't know that you heard from us on the one issue that Joel

16 raised about -- that Mr. Rothman raised about the discovery,

17 about the request for production and the admissions, that he

18 wanted the Defendants to be limited to ten additional.

19         I wanted to clarify that what we agreed to was that

20 we would serve ten common and then we would agree not to

21 duplicate in additional requests, but we saw no reason, since

22 the Federal rules don't limit requests for production or

23 requests for admissions, we saw no reason why, in this case, we

24 should be limited to an additional ten, which would effectively

25 limit each Defendant to 20, when there is no such requirement

February 25, 2015

1  under the Federal rules.

2          So that's what we agreed to; one set of common and

3  not to duplicate additional requests, but if we have additional

4  requests, that number would not be limited.

5          THE COURT:  Well, I mean, that's what the rules

6  provide.  I would look to -- I don't want discovery to become

7  onerous.

8          MR. FISCHER:  Nor do we.

9          THE COURT:  I want it to be reasonable, so we will

10 see where we go with that.

11         MR. NELLES:  The only other issue was a consolidation

12 order, did you mention that?

13         MR. ROTHMAN:  That's a good point, Your Honor.

14         Do you want us to prepare an order consolidating

15 these cases, will Your Honor issue it on its own?  We were a

16 little rushed to get this filed.

17         THE COURT:  Anything -- to the degree you all want to

18 propose an order, I will certainly look at it and work with

19 Drew to do it.

20         My intention is to consolidate the cases -- these

21 cases for trial.  I'm not going to deal with the two that are

22 hanging out there, but I will tell you they will have a hard

23 time getting on a different schedule --

24         MR. ROTHMAN:  Understood.

25         THE COURT:  -- without a showing.

February 25, 2015

```
 1              I haven't heard from them yet, but my intention is
 2      that everybody will progress on the same schedule.
 3              MR. ROTHMAN:  All right.  We will work out an order
 4      and submit it.
 5              THE COURT:  If you all want to do that today, Drew is
 6      here and I will enter the order.
 7              And so there are two things that are hanging out
 8      there for you to do, right; the motion to dismiss, briefing,
 9      tell me about that and this early Markman issue are the two
10      things I'm looking for something from you all on.
11              Okay.  Thanks.  Have a good day.
12              MR. NELLES:  Thank you, Your Honor.
13              MR. ROTHMAN:  Thank you, Your Honor.
14          (PROCEEDINGS ADJOURNED AT 11:36 A.M.)
15
16                        C-E-R-T-I-F-I-C-A-T-E
17              I hereby certify that the foregoing is
18          an accurate transcription and proceedings in the
19          above-entitled matter.
20
        3/20/2015                    /s/DIANE MILLER_____
21      DATE                         DIANE MILLER, RMR, CRR
                                     Federal Official Court Reporter
22                                   United States District Court
                                     701 Clematis Street, Room 259
23                                   West Palm Beach, FL  33401
                                     561-514-3728
24
25
```

February 25, 2015

Leadaing Edge vs. Wal-Mart, et al                              45

/

/s/DIANE [1]  44/20

**0**

07932 [1]  2/13

**1**

10 [1]  5/20
100 [1]  31/7
103 [1]  20/4
11 [1]  24/6
11-2 [1]  2/21
1100 [1]  1/23
11:36 [1]  44/14
12 [2]  17/23 24/4
14 [1]  5/20
14-81447 [1]  3/5
14-cv-81453-MIDDLEBROOKS [1]  1/3
1st [2]  29/13 39/15

**2**

20 [1]  42/25
200 [2]  2/13 2/17
2014 [1]  39/15
2015 [2]  1/8 44/20
25 [1]  1/8
259 [1]  44/22
2700 [1]  2/4

**3**

3/20/2015 [1]  44/20
30 [1]  18/15
305 [1]  2/22
33128 [1]  2/21
33131 [1]  2/18
33134 [1]  1/24
33394 [1]  2/4
33401 [1]  44/23
33431 [1]  1/20
355 [1]  1/23
3728 [1]  44/23

**4**

400 [1]  2/21
408 [1]  8/22
42 [1]  6/16
4400 [1]  2/7
4651 [1]  1/20
4700 [1]  2/17

**5**

50 [1]  31/19
523-5251 [1]  2/22
5251 [1]  2/22
53 [1]  1/10
561-514-3728 [1]  44/23

**6**

60606 [1]  2/7

**7**

701 [1]  44/22

**8**

81447 [1]  3/5
81449 [2]  3/6 3/20
81450 [1]  3/6
81453 [1]  3/6
81454 [1]  3/6
81465 [1]  5/2
81492 [2]  3/7 3/22
81595 [1]  14/16
81597 [1]  14/18

**A**

A.M [1]  44/14
abbreviated [1]  18/21
able [8]  8/5 11/10 11/12 11/18 24/24 37/12
 40/1 40/17
about [23]  4/23 5/4 5/15 5/18 6/24 7/25
 15/24 19/24 23/3 26/17 28/10 28/19 32/18
 33/6 33/13 39/8 40/8 41/17 42/8 42/16
 42/16 42/17 44/9
above [2]  24/18 44/19
above-entitled [1]  44/19
Absolutely [1]  22/20
acceptable [2]  35/4 35/6
according [3]  24/16 40/11 40/11
accurate [1]  44/18
accused [1]  15/3
actually [3]  16/18 23/9 26/7
add [1]  41/11
addition [2]  12/15 32/15
additional [9]  8/5 17/21 35/7 35/17 42/18
 42/21 42/24 43/3 43/3
address [9]  8/5 9/4 12/10 13/12 14/14 15/4
 17/9 20/23 27/23
addressed [1]  15/3
adequately [1]  13/24
ADJOURNED [1]  44/14
admissions [5]  35/10 35/12 35/14 42/17
 42/23
admitted [1]  6/23
advance [1]  30/6
affect [1]  42/4
affects [1]  33/8
after [2]  17/17 31/15
again [5]  6/4 8/17 13/7 13/22 28/24
against [2]  13/25 17/23
ago [5]  7/7 9/21 12/4 32/19 39/18
AGOSTINO [2]  2/11 4/8
agree [18]  16/6 16/16 16/16 18/12 18/14
 18/24 19/14 26/14 30/14 33/4 33/5 33/6
 33/14 41/17 41/20 41/23 41/25 42/20
agreeable [2]  18/20 20/11
agreed [15]  6/11 16/18 19/12 19/19 26/10
 26/12 27/16 27/17 29/12 34/1 35/13 41/16
 42/3 42/19 43/2
agreeing [1]  28/2
agreement [15]  6/8 7/8 7/11 7/19 8/11
 12/22 15/20 19/25 20/9 27/20 30/12 34/1
 34/24 35/18 38/14
agreements [10]  12/3 12/4 39/4 39/9 39/13
 39/13 39/14 39/15 39/17 39/21
agrees [2]  17/24 33/14
Alhambra [1]  1/23
all [67]
alleged [1]  36/9
alleges [1]  10/4
alone [1]  14/18
along [2]  34/23 41/21
already [1]  37/16
also [15]  3/21 4/8 7/4 9/23 10/14 11/25
 12/16 14/21 17/8 20/16 27/3 28/1 31/4

34/22 36/8
although [1]  22/12
always [1]  6/8
am [2]  3/21 12/8
amenable [4]  17/11 32/25 33/17 38/10
amend [2]  15/4 15/5
American [2]  40/19 40/21
amount [3]  6/8 31/8 31/12
and Joel [1]  21/25
ANDREW [1]  2/15
Andy [1]  4/11
announced [1]  3/11
another [4]  4/20 13/1 24/3 31/23
answer [4]  11/6 13/10 25/11 35/16
any [12]  11/11 15/24 16/25 17/25 19/1 21/5
 25/16 26/10 40/21 41/23 41/24 42/5
Anybody [1]  4/16
anyone [1]  16/15
anything [8]  20/4 30/3 38/18 39/4 41/15
 42/7 42/8 43/17
apparently [1]  12/19
appear [1]  14/22
appearances [2]  1/17 3/8
appeared [1]  41/8
appearing [1]  11/4
appears [1]  39/12
apple [3]  27/22 28/7 29/17
application [1]  7/2
approach [1]  42/9
April [1]  29/13
are [144]
aren't [1]  17/25
argued [1]  29/22
arguing [3]  15/6 25/21 29/21
argument [1]  29/24
arguments [2]  19/22 19/23
around [2]  10/23 11/1
arrow [1]  23/10
art [1]  20/3
as [78]
ask [1]  38/17
asked [5]  8/21 20/8 35/8 35/14 39/19
asking [6]  17/23 25/1 26/13 26/24 32/20
 34/8
aspects [1]  6/3
assert [1]  7/15
asserted [2]  9/18 13/25
assigned [5]  12/20 12/22 12/24 12/25 13/4
assistance [1]  15/20
associated [1]  20/21
assume [1]  40/23
assuming [6]  18/1 19/2 19/3 30/7 35/21
 37/14
assumption [2]  16/13 30/8
Atake [18]  9/21 9/25 11/7 11/10 11/22 12/3
 12/4 12/7 12/11 12/23 13/5 13/5 37/20
 39/25 40/13 40/20 41/1 41/5
Atake, [1]  9/20
Atake, A-T-A-K-E [1]  9/20
attached [1]  29/23
attention [1]  15/18
authority [1]  10/1
AUVIL [2]  2/16 4/13
Avenue [2]  2/13 2/21
avoid [1]  12/5
aware [2]  10/13 41/9
away [1]  37/2

Leadaing Edge vs. Wal-Mart, et al · 46

**B**

back [7]  5/23 6/17 9/15 12/24 12/25 19/3
  29/16
Barnes [2]  2/6 3/25
barred [1]  20/4
based [6]  7/21 13/19 15/12 17/15 27/11
  40/17
basically [5]  25/25 30/22 31/10 38/8 42/6
basis [5]  8/24 8/25 14/3 20/13 37/1
Bath [3]  2/15 3/5 4/12
be [85]
BEACH [2]  1/7 44/23
bearing [1]  39/1
because [21]  8/3 9/23 10/13 11/2 11/23 14/1
  14/22 15/11 17/1 20/13 24/16 25/23 26/8
  29/2 29/23 29/25 30/12 30/25 36/14 36/15
  39/16
become [1]  43/6
Bed [3]  2/15 3/5 4/12
been [22]  4/17 4/20 4/21 6/7 6/24 7/4 7/18
  10/20 10/21 11/9 12/25 13/6 14/24 18/18
  35/3 36/9 37/11 37/11 39/20 39/22 40/1
  41/1
before [3]  1/14 8/14 42/10
behalf [5]  3/19 3/21 21/23 35/24 37/19
being [6]  9/18 11/23 26/17 26/20 27/13
  31/15
believe [18]  4/8 5/10 19/17 21/8 22/4 23/18
  24/14 24/19 24/21 25/7 25/9 32/25 35/18
  36/8 36/9 36/10 38/2 39/23
believes [1]  23/16
bench [7]  5/9 19/16 19/24 20/9 20/12 37/7
  38/15
beneficial [1]  20/7
benefit [2]  7/14 15/7
better [1]  38/21
between [6]  6/25 7/12 9/22 12/3 28/17 36/4
beyond [4]  2/15 3/5 4/12 17/25
bifurcate [3]  33/10 37/4 38/8
bifurcated [1]  26/18
big [5]  9/11 19/8 30/7 37/17 37/17
bigger [1]  36/21
Biscayne [1]  2/17
bit [3]  5/15 23/12 23/16
bite [1]  27/22
bites [1]  28/7
Bluetooth [1]  36/22
Boca [1]  1/20
Boggs [2]  2/16 4/13
borrow [1]  31/9
both [6]  4/6 4/13 9/25 10/12 19/13 30/15
bottom [2]  15/25 29/8
Boulevard [1]  2/17
break [1]  5/22
brief [1]  39/8
briefing [4]  18/7 26/18 33/12 44/8
briefs [1]  27/19
bring [3]  15/18 37/6 38/16
bringing [1]  37/8
Broad [2]  2/3 3/19
brought [3]  6/18 22/1 22/15
bubbles [2]  24/7 24/10
burden [1]  13/23
buys [2]  25/6 37/20

**C**

C-E-R-T-I-F-I-C-A-T-E [1]  44/16

call [1]  21/10
called [2]  9/20 13/21
can [43]  5/11 7/14 8/13 8/13 9/1 12/2 13/12
  13/24 14/13 15/5 18/16 18/24 19/2 19/5
  21/16 21/19 22/25 24/15 26/19 27/7 27/11
  27/20 27/23 28/12 29/14 30/14 31/6 31/8
  31/11 31/20 32/2 32/6 32/9 32/12 33/12
  33/16 33/16 33/17 33/21 34/4 34/9 34/12
  37/4
can dispose [1]  34/4
can't [4]  30/8 30/15 31/23 38/12
candidly [1]  20/1
cannot [2]  31/17 32/23
capacity [1]  11/4
case [56]
cases [37]  3/3 3/11 4/19 5/7 5/16 6/1 6/13
  6/15 8/10 8/25 10/8 10/12 10/18 10/19
  10/20 10/25 11/3 11/21 11/22 12/10 12/10
  14/16 14/20 14/23 16/10 16/22 16/23 17/22
  21/12 22/22 28/2 28/11 28/15 42/11 43/15
  43/20 43/21
Cassel [2]  2/3 3/19
caveat [1]  38/20
certain [7]  26/21 27/14 27/22 29/9 30/19
  33/10 35/2
certainly [16]  6/13 6/24 7/20 8/4 8/16 14/4
  16/22 17/11 18/12 18/18 25/20 29/22 37/4
  38/14 41/11 43/18
certified [1]  39/13
certify [1]  44/17
cetera [1]  16/6
chamber [1]  23/23
chance [2]  22/6 37/10
changes [1]  41/23
changing [1]  41/19
characterized [1]  30/22
chart [3]  22/25 26/8 26/8
CHEN [9]  1/6 3/13 7/7 9/22 12/3 13/3
  14/17 14/18 15/13
Chicago [2]  2/7 14/11
China [5]  9/16 9/20 11/14 11/17 12/20
Chinese [12]  9/24 12/12 12/14 12/16 12/18
  13/2 37/11 39/22 39/24 40/4 40/10 40/11
Circle [1]  1/23
circumstances [2]  12/23 29/20
claim [38]  7/1 17/15 22/14 22/25 23/1 23/19
  23/20 24/17 24/18 24/24 25/1 25/20 25/25
  26/8 26/8 26/11 26/18 27/3 27/4 27/10
  27/12 27/17 27/18 27/24 27/25 28/8 28/12
  28/16 28/24 29/2 29/23 30/23 30/24 30/25
  31/2 31/2 37/1 38/25
claims [9]  9/3 26/19 26/21 29/25 30/19
clarify [2]  41/13 42/19
clear [5]  16/19 26/9 39/16
clearly [1]  11/5
Clematis [1]  44/22
clerk [1]  22/19
client [10]  9/19 9/19 12/14 12/21 18/20 19/4
  21/25 37/9 37/13 37/14
client's [2]  7/8 32/13
co [1]  3/22
co-counsel [1]  3/22
colleagues [2]  4/5 4/7
colored [1]  6/20
come [3]  16/17 21/8 25/17
comes [1]  42/4
coming [1]  8/14

comment [1]  42/14
comments [2]  36/24 39/8
common [3]  35/13 42/20 43/2
communications [1]  41/1
company [2]  11/25 11/25
company's [1]  14/12
comparable [1]  40/18
competitor [1]  9/9
complaint [5]  15/3 22/9 22/24 26/6 40/2
completely [3]  21/24 28/22 28/22
complication [1]  41/12
components [1]  27/14
compressed [2]  8/4 18/13
comprising [1]  23/2
compromise [1]  9/2
concept [2]  32/25 33/2
concern [1]  18/9
concerned [5]  17/13 31/11 31/12 31/24
  33/14
conference [1]  1/14 4/21 17/14
confidential [2]  8/22 41/24
confidentiality [1]  42/3
confusing [1]  13/10
conjunction [1]  31/21
connected [1]  29/9
connection [1]  9/16
consent [1]  16/25
consider [2]  19/18 19/21
consolidate [6]  5/17 6/15 18/1 18/2 21/16
  43/20
consolidating [3]  16/23 28/2 43/14
consolidation [10]  5/20 6/10 6/11 16/4
  16/17 19/11 19/12 20/11 34/24 43/11
construction [18]  7/1 24/24 25/1 25/20
  25/25 26/9 26/18 27/3 27/12 27/18 27/19
  28/1 28/8 28/12 28/16 29/2 29/23 40/16
construe [6]  26/21 26/25 27/4 28/21 28/24
  29/25
construed [4]  24/14 27/9 31/18 31/19
construing [3]  26/11 30/23 30/23
consult [1]  37/12
consultation [1]  16/3
consulted [1]  16/9
contacts [4]  11/12 14/5 14/12 14/12
container [1]  27/8
contended [1]  10/5
contentions [2]  27/18 29/13
context [3]  27/10 28/22 28/23
continue [1]  9/1
contracts [3]  40/10 40/12 40/17
contrary [3]  27/3 27/25 28/1
cooperate [1]  41/22
cooperative [1]  40/14
copies [3]  22/10 39/12 39/20
Coral [1]  1/24
corporate [1]  14/11
correct [3]  4/9 28/9 32/13
correspondence [1]  12/9
costs [1]  20/13
could [19]  9/2 11/20 11/20 11/21 12/6 21/12
  21/19 24/25 27/5 27/6 27/7 28/13 29/22
  29/24 30/7 31/6 34/14 38/18 39/14
couldn't [3]  35/20 36/23 39/3
counsel [11]  3/22 15/20 17/10 25/19 26/24
  27/21 29/11 30/21 32/4 39/19 41/2
Counsel's [2]  18/19 36/24
country [1]  11/18

Case 9:14-cv-81447-DMM   Document 36   Entered on FLSD Docket 03/25/2015   Page 47 of 53

Leadaing Edge vs. Wal-Mart, et al                                          47

**C**

couple [3]  9/4 13/12 32/12
court [12]  1/2 2/20 19/11 19/21 20/17 21/17
 29/14 39/7 42/2 42/5 44/21 44/22
Court's [3]  15/24 19/13 41/14
courtroom [2]  3/9 6/6
Craig [2]  1/22 3/16
created [1]  24/7
creating [1]  24/10
CRR [2]  2/20 44/21
current [1]  13/5
cut [1]  25/15
cv [1]  1/3

**D**

D1 [1]  16/5
damage [1]  38/23
damages [2]  36/1 39/3
dance [1]  6/21
data [1]  41/24
date [5]  14/21 15/6 34/23 41/16 44/21
dates [2]  41/20 41/21
David [1]  23/4
day [1]  44/11
days [3]  18/15 34/13 34/17
deadline [1]  7/23
deadlines [2]  8/4 41/20
deal [9]  7/17 12/9 12/10 15/14 16/23 18/15
 27/14 33/10 43/21
dealing [2]  12/6 36/6
December [1]  39/15
decide [5]  28/3 30/10 30/20 33/3 34/22
decided [2]  32/3 32/23
deciding [1]  21/2
decision [2]  19/1 27/11
Defendant [13]  13/25 17/8 17/15 18/14
 20/20 25/12 29/20 35/11 35/16 36/2 36/11
 36/13 42/25
defendants [55]
Defendants' [6]  7/2 25/8 25/16 30/17 33/19
 36/18
defense [6]  7/15 9/17 14/4 37/23 37/24
 39/10
Defts [4]  1/22 2/2 2/9 2/15
degree [2]  5/20 43/17
demand [3]  8/24 12/23 12/25
deposition [3]  14/11 18/16 40/15
desire [1]  8/19
despite [1]  6/5
details [1]  14/12
determination [5]  17/17 20/5 28/18 29/15
 38/1
determine [4]  11/10 13/24 28/12 40/2
determines [1]  18/11
DGL [2]  2/15 4/12
diane [4]  2/20 2/22 44/20 44/21
did [11]  7/7 14/20 14/21 18/8 19/14 38/8
 38/8 39/7 39/11 39/23 43/12
didn't [2]  25/22 25/23
differences [1]  36/4
different [15]  5/18 6/20 10/20 15/15 15/15
 15/15 18/4 19/3 21/2 21/25 26/23 26/25
 36/16 38/25 43/23
Digital [1]  4/25
direct [3]  23/20 23/25 23/25
directed [4]  21/24 22/1 24/2 24/22

disagreement [1]  28/17
disclosure [2]  8/22 41/25
disclosures [3]  7/23 10/24 11/24
discovery [19]  6/10 6/12 6/16 7/17 13/23
 15/22 16/5 17/11 18/13 19/12 32/8 33/20
 33/22 35/2 40/14 41/18 42/1 42/16 43/6
discuss [1]  30/11
discussing [2]  10/21 10/21
discussion [1]  22/11
discussions [1]  14/25
dismiss [11]  5/13 13/16 15/3 17/18 25/21
 25/23 26/4 29/21 32/12 41/17 44/8
dismissed [4]  24/15 24/25 32/6 32/11
dispose [5]  20/7 21/19 21/19 34/4 38/11
dispositive [9]  20/23 21/12 22/4 22/7 23/19
 26/17 31/20 32/22 41/20
dispute [3]  7/12 9/22 13/1
disputes [1]  6/25
distribute [1]  22/17
distributed [1]  10/19
distributing [1]  15/17
distribution [1]  10/6
distributor [3]  10/10 11/3 11/4
distributors [1]  10/17
district [5]  1/2 1/2 1/15 14/6 15/10 15/11
 32/16 44/22
DIVISION [1]  1/3
do [59]
docket [1]  11/1
document [2]  18/16 42/4
does [6]  8/10 11/6 15/13 23/16 37/14 41/5
doesn't [10]  6/8 8/9 26/18 27/2 27/15 29/1
 31/6 31/18 38/23 42/4
doing [4]  5/20 8/3 17/23 19/25
Dollar [4]  1/22 3/6 3/16 25/8
dollars [1]  32/8
don't [34]  7/10 7/16 10/15 10/25 12/18
 15/23 16/15 16/17 16/24 19/2 22/5 22/5
 23/15 26/3 29/18 29/19 30/3 30/9 30/13
 31/14 33/5 33/8 36/10 36/14 36/22 37/22
 39/3 40/9 41/1 41/7 41/24 42/15 42/22 43/6
DONALD [1]  1/14
done [4]  12/6 18/21 33/12 34/9
down [3]  20/13 21/18 23/10
downstream [1]  7/13
dragged [1]  18/10
Drew [3]  22/21 43/19 44/5
Drive [1]  2/6
drives [1]  23/23
duplicate [2]  42/21 43/3
during [1]  41/25

**E**

each [12]  3/4 18/23 21/6 22/5 30/14 34/2
 35/7 35/14 35/15 36/2 41/23 42/25
earlier [4]  9/17 19/16 20/18 37/5
early [20]  20/22 21/11 21/18 21/19 24/15
 24/25 25/1 26/13 28/23 30/18 31/20 32/3
 32/6 32/10 32/17 32/21 33/11 33/15 33/22
 44/9
easily [1]  15/5
eat [1]  29/16
economy [1]  6/14
EDGE [6]  1/6 3/4 3/13 9/19 14/16 14/18
effectively [1]  42/24
efficiencies [1]  5/23
efficiency [1]  6/14

efficient [1]  5/21
effort [1]  10/22
eight [1]  23/21
either [2]  18/1 33/25
element [3]  13/1 24/4 40/16
eloquent [1]  25/20
else [4]  4/16 39/4 41/15 42/8
empty [1]  30/13
end [8]  5/22 14/16 23/20 28/7 28/7 32/9
 32/24 38/16
ending [2]  5/1 14/17
endorses [1]  25/6
Energy [1]  4/25
engage [3]  14/2 14/2 17/10
enter [1]  44/6
entered [1]  12/21
entire [7]  21/20 27/4 27/8 27/10 28/16
 31/18 32/12
entitled [3]  7/14 35/7 44/19
envision [1]  6/19
especially [3]  29/2 34/18 37/18
ESQ [13]  1/18 1/19 1/22 2/2 2/5 2/9 2/10
 2/10 2/11 2/11 2/12 2/15 2/16
essentially [1]  29/20
establish [1]  11/18
et [1]  16/6
even [10]  5/21 11/17 15/13 15/19 19/18
 27/16 29/12 31/1 31/14 31/18
events [1]  7/23
ever [3]  13/6 40/20 41/7
every [2]  8/6 26/11
everybody [5]  17/24 21/20 28/5 35/21 44/2
everybody's [4]  21/5 25/2 25/9 33/4
everyone [3]  6/11 28/2 37/11
everything [4]  5/17 29/9 30/9 34/19
evidence [4]  10/15 27/18 36/11 39/20
ex [1]  15/6
exactly [2]  7/10 15/10
example [4]  6/18 10/23 18/15 31/9
examples [1]  10/11
excellent [1]  9/13
except [1]  40/10
exception [2]  18/2 35/1
excited [1]  5/19
Excuse [1]  41/4
exhaustion [8]  7/6 7/15 9/17 20/15 37/20
 38/1 39/8 40/5
exhibit [6]  22/25 23/1 23/21 24/1 26/6 26/7
exhibits [3]  22/10 22/15 22/17
existence [1]  12/17
expansive [1]  23/13
expectation [1]  8/6
expedite [1]  19/1
expedited [1]  14/3
experts [1]  32/2
explain [2]  14/23 21/17
exportation [1]  11/14
exported [1]  10/2
exporting [1]  11/18
exports [1]  11/16
express [1]  8/17
expressed [1]  8/17
extend [2]  8/11 17/24
extension [1]  13/17
extent [3]  20/6 37/23 40/10
extra [2]  22/18 22/23

Case 9:14-cv-81447-DMM  Document 36  Entered on FLSD Docket 03/25/2015  Page 48 of 53

Leadaing Edge vs. Wal-Mart, et al                48

**F**

fair [1]  36/11
far [9]  6/7 6/10 6/24 17/13 31/10 31/11
 31/24 33/13 40/1
fashion [1]  5/11
favorable [1]  15/1
FEBRUARY [4]  1/8 5/8 34/23 41/16
Federal [1]  1/20 42/22 43/1 44/21
feel [2]  21/23 24/13
felt [3]  19/20 20/6 20/23
few [3]  6/26 26/25 34/5
figure [5]  4/18 24/1 24/4 24/6 33/24
file [4]  18/8 33/25 42/1 42/5
filed [10]  4/20 5/12 13/16 14/22 15/2 15/9
 22/9 34/14 40/3 43/16
fill [6]  23/17 31/4 31/6 31/6 31/8 31/19
filled [8]  22/7 23/6 23/7 23/10 23/14 24/3
 27/7 31/15
filling [3]  23/14 24/5 31/18
fills [2]  24/12 27/6
finally [1]  12/8
Financial [1]  2/3
find [4]  6/5 11/24 14/12 30/11
fine [1]  30/15
first [9]  3/8 5/10 15/25 16/1 17/9 17/11
 27/23 38/8 38/15
FISCHER [2]  1/22 3/17
five [3]  4/19 36/6 39/14
FL [2]  2/21 44/23
Florham [1]  2/13
FLORIDA [9]  1/2 1/7 1/20 1/24 2/4 2/18
 13/22 14/5 14/13
flows [1]  24/9
flsd.uscourts.gov [1]  2/22
fluid [33]  22/8 22/8 23/6 23/7 23/10 23/14
 23/16 23/16 23/19 23/23 24/2 24/3 24/4
 24/5 24/8 24/9 24/11 24/11 24/19 24/18
 27/5 27/6 29/6 29/7 29/7 31/3 31/8 31/15
 31/16 31/21 31/22 31/23 31/23
fluids [5]  24/14 24/19 30/25 30/25 31/2
flushed [1]  8/13
FOB [1]  11/17
foregoing [1]  44/17
foreign [3]  40/13 40/16 40/16
Forever [3]  14/17 14/24 16/10
forget [1]  15/10
form [1]  16/25
Fort [1]  2/4
forward [3]  6/3 8/25 42/12
four [2]  4/19 4/20
fourth [1]  4/24
FROEMEL [5]  2/5 3/24 3/25 35/24 35/24
full [4]  10/24 27/7 27/7 32/23
further [1]  8/2

**G**

Gables [1]  1/24
General [3]  1/22 3/6 3/17
General's [1]  25/9
generally [1]  6/17
generously [1]  13/17
get [9]  3/8 9/8 13/21 16/12 18/17 18/21 19/2
 34/9 43/16
gets [1]  13/9
getting [2]  11/24 43/23
Gifts [3]  14/17 14/24 16/11

give [5]  5/1 15/7 17/20 30/15 34/12
glass [2]  27/6 27/7
go [11]  5/5 9/15 15/1 21/13 29/16 32/7 32/8
 34/23 41/16 41/20 43/10
goes [1]  37/2
going [21]  5/5 6/1 6/5 7/17 8/25 9/5 14/23
 15/1 17/24 19/8 20/16 21/2 21/13 21/15
 30/10 38/11 38/17 38/19 40/14 41/21 43/21
good [21]  3/2 3/14 3/15 3/18 3/24 4/2 4/3
 4/10 4/11 4/14 4/15 8/11 13/9 17/5 17/6
 21/22 34/11 36/25 42/11 43/13 44/11
got [4]  4/18 6/20 31/22 34/21
gotten [1]  16/25
governed [1]  40/11
granted [1]  13/17
great [2]  13/14 16/23
Greenberg [2]  2/12 4/4
GREGORY [2]  2/9 4/3
group [4]  1/19 3/7 3/12 6/6
guess [5]  5/19 20/21 22/12 25/24 33/10 34/4
 34/23

**H**

Hac [1]  4/6
had [11]  5/6 9/21 16/12 20/8 20/21 22/5
 31/4 35/3 35/21 37/10 42/10
half [1]  27/6
Hallmark [7]  14/19 15/2 15/2 15/11 15/14
 16/11 18/3
hanging [4]  10/23 11/1 43/22 44/7
hangs [1]  28/18
happen [3]  6/8 8/9 8/10
happened [2]  6/9 9/25
happy [1]  14/7
hard [2]  6/19 43/22
has [38]  4/16 5/12 6/7 6/8 6/20 6/24 7/18
 8/17 9/21 9/25 11/10 11/11 11/11 12/14
 13/4 13/16 14/4 14/5 15/2 21/7 22/1 22/23
 27/16 29/6 29/7 30/22 31/22 32/15 32/16
 36/9 37/9 37/11 37/11 37/24 39/15 39/20
 39/22 40/20
hasn't [1]  12/25
have [97]
haven't [7]  4/20 17/1 21/4 22/13 37/10
 42/11 44/1
having [12]  12/8 19/16 20/9 20/11 20/13
 21/17 22/10 28/3 33/15 33/22 35/16 36/5
he [13]  12/22 13/3 13/4 25/21 25/24 26/3
 26/4 26/6 26/13 30/2 30/3 39/18 42/17
hear [4]  5/3 8/8 9/5 30/2
heard [4]  32/18 36/3 42/15 44/1
hearing [14]  3/2 20/22 22/16 26/14 30/4
 30/19 32/9 32/10 32/17 32/21 32/24 33/9
 33/16 33/22
hearings [4]  5/18 21/3 28/8 30/6
heavier [11]  22/8 23/23 24/2 24/4 24/8 24/9
 24/11 24/18 31/21 31/22 31/23
held [1]  17/16
help [1]  11/6
helpful [4]  13/7 22/10 22/16 26/15
HERBERT [2]  2/9 4/4
here [39]  3/21 5/4 6/6 6/11 6/13 7/9 8/18
 10/3 11/25 12/7 13/15 14/8 14/15 14/22
 15/7 15/22 16/15 17/13 17/14 17/25 19/9
 22/13 22/16 22/19 22/23 23/15 23/17 26/12
 26/20 27/6 28/10 28/20 31/14 31/18 31/19
 32/20 37/22 41/5 44/6

hereby [1]  44/17
Highway [1]  1/20
him [1]  12/24
himself [1]  3/22
his [1]  12/23
hold [1]  41/22
holder [1]  10/1
Hollander [1]  22/21
hollow [1]  23/2
hone [1]  26/20
Honor [66]
Honor's [4]  7/21 8/10 11/1 13/11
HONORABLE [1]  1/14
hope [1]  9/1
hopefully [3]  10/24 30/17 42/12
how [10]  5/25 7/19 16/21 27/20 33/7 34/8
 36/19 36/19 40/7 40/13
however [2]  11/21 18/21
hundreds [1]  32/8

**I**

I'll [10]  5/1 9/5 18/4 20/18 20/23 34/2 34/6
 34/23 38/21 41/20
I'm [27]  5/10 5/19 7/10 9/5 14/25 15/6
 17/23 17/24 19/8 21/23 23/4 23/25 24/20
 30/10 33/2 33/23 34/18 34/19 38/5 38/10
 38/12 38/19 41/9 41/21 42/7 43/21 44/10
idea [3]  20/10 28/9 38/21
identical [3]  36/7 36/19 36/22
identify [1]  10/16
Illinois [2]  2/7 14/7
imagine [1]  12/2
immediately [1]  33/18
impact [2]  40/7 40/9
importation [2]  10/5 11/14
imported [2]  8/23 10/3
impossible [1]  26/1
INC [3]  1/6 1/9 3/4
inclined [3]  19/18 34/18 34/19
include [1]  3/5
included [1]  8/25
includes [1]  27/17
including [1]  8/4
indefinitely [1]  8/12
indemnitor [1]  11/4
independent [1]  36/2
indicate [2]  11/17 39/11
indicated [1]  20/20
indicating [1]  8/22
individual [2]  7/6 38/22
individually [1]  13/3
INDUSTRIES [1]  1/9
information [1]  10/16
infringe [2]  10/4 36/19
infringement [6]  25/25 28/13 28/13 29/13
 36/5 36/9
infringements [2]  10/6 12/5
infringers [3]  10/25 12/5 12/21
infringing [1]  10/14
initial [3]  5/7 29/13 29/14
initially [2]  7/20 21/18
instance [2]  3/4 38/6
instant [1]  16/5
intention [2]  43/20 44/1
interconnected [3]  6/23 26/22 29/5
interconnectedness [1]  34/5
interest [1]  8/18

**I**

interesting [1]  26/5
interpret [1]  40/17
interpretation [2]  23/13 24/17
interrogatories [1]  35/4
introduce [1]  3/22
introduced [1]  4/17
invalidity [8]  5/10 19/16 19/20 20/11 37/6
 37/16 38/4 38/15
invite [2]  33/24 34/22
involved [1]  18/10
involving [3]  4/25 10/24 11/22
IP [2]  1/19 3/12
IRA [1]  1/19
is [164]
isn't [2]  18/11 29/1
isolate [3]  27/13 29/15 30/7
isolation [3]  31/24 32/5 32/6
issue [18]  14/13 14/14 14/20 17/9 19/15
 20/10 20/18 25/14 34/22 37/1 37/4 37/20
 38/23 39/2 42/15 43/11 43/15 44/9
issues [30]  5/10 6/12 7/4 7/18 8/6 8/13 9/4
 9/23 13/12 15/5 19/11 20/1 20/2 20/3 20/15
 20/17 21/8 21/19 27/9 28/3 34/25 35/19
 36/1 36/16 37/6 37/9 37/18 38/7 38/9 38/22
it [107]
it's [5]  5/1 7/16 31/25 32/19 38/10
its [64]  8/18 8/19 11/13 43/15

**J**

JAMES [1]  2/11
Jamie [1]  4/8
JEROLD [2]  1/19 3/11
Jersey [1]  2/13
JOEL [5]  1/18 3/11 6/4 21/25 42/15
JOHN [4]  2/10 4/5 35/24 41/9
joint [2]  7/5 15/21
JONATHAN [2]  2/5 3/24
JOSEPH [2]  2/11 4/7
JR [1]  2/10
JUDGE [5]  1/15 16/18 17/5 18/25 20/1
judgment [1]  30/5
judicial [1]  6/14
jurisdiction [8]  5/13 5/14 11/13 11/19
 13/17 13/24 17/16 18/11
jurisdictional [2]  17/11 34/22
jury [7]  20/14 37/9 37/14 37/25 38/9 38/16
 38/17
just [22]  3/11 5/15 6/2 6/15 6/17 6/19 9/8
 11/22 16/10 17/9 19/8 20/6 21/17 23/11
 25/5 27/14 35/8 37/6 39/16 40/5 41/13
 42/14
justify [1]  8/9

**K**

K-mart [1]  4/25
keep [2]  10/25 20/13
key [1]  22/4
KIM [5]  2/10 4/5 20/18 20/23 21/17
kind [2]  38/10 42/5
kinds [2]  41/21 42/6
know [27]  5/12 11/2 12/3 13/10 14/6 15/6 16/18
 18/14 18/19 22/5 25/4 25/13 29/12 29/18
 29/19 29/21 30/3 32/1 32/7 33/3 33/14
 34/14 37/22 40/20 41/7 41/9 41/24 42/15
knowing [1]  19/10

knowledge [3]  12/18 40/25 41/10
KRUPPA [3]  2/15 4/11 4/11

**L**

lack [3]  5/13 13/16 17/15
large [1]  6/6
LAROSE [23]  1/9 2/9 4/5 10/10 10/20
 20/22 21/23 23/16 24/20 25/3 25/6 25/19
 26/10 27/16 27/21 31/10 31/24 32/13 33/14
 37/19 37/19 39/6 40/3
Larose's [3]  24/25 25/5 31/17
last [4]  15/18 16/2 23/22 37/12
later [3]  14/22 16/17 18/5
Lauderdale [1]  2/4
law [10]  1/19 3/12 12/19 13/21 13/22 22/19
 27/11 40/11 40/16 40/16
lawsuits [1]  40/23
lawyers [4]  6/6 41/3 41/5 42/11
lead [1]  3/4
LEADING [6]  1/6 3/4 3/13 9/19 14/16
 14/18
learn [1]  9/12
least [13]  5/6 5/12 7/9 16/9 22/7 23/6 23/7
 25/8 26/14 37/16 38/6 40/3 40/4
leave [1]  10/22
LEDs [1]  6/20
legal [1]  7/18
less [1]  27/7
let [8]  3/22 5/3 6/2 9/4 14/23 20/18 20/23
 41/19
let's [10]  3/8 4/18 5/15 5/25 9/15 26/24
 27/13 29/12 29/13 37/5
license [7]  7/8 7/11 7/14 9/22 12/17 13/5
 39/9
licensed [2]  12/17 13/6
licensees [1]  9/14
lighter [2]  24/8 24/9
like [16]  5/21 9/8 9/18 10/9 10/10 12/9 18/4
 25/9 25/17 25/19 25/21 27/22 30/17 31/15
 32/21 38/7 42/11
limit [2]  42/22 42/25
limitations [2]  35/2 41/25
limited [7]  8/12 21/11 35/8 35/16 42/18
 42/24 43/4
liquid [11]  23/8 24/4 24/9 24/9 24/11 24/15
 24/21 24/23 25/9 31/11 31/12
liquids [3]  24/19 24/22 31/1
little [7]  5/15 13/9 18/4 23/12 23/16 36/21
 43/16
LLC [1]  1/9
LLP [3]  2/6 2/12 2/16
long [3]  33/7 34/8 41/22
longer [2]  9/21 12/17
look [7]  18/5 22/6 23/8 30/7 30/9 43/6 43/18
looked [5]  7/20 19/10 21/4 21/5 21/7
looking [4]  6/19 20/2 20/5 44/10
looks [2]  9/7 42/11
lose [1]  27/23
lot [2]  9/10 27/15
Louis [1]  15/12
loves [1]  22/22

**M**

made [6]  8/3 12/25 16/13 17/18 20/12 29/24
make [16]  8/23 16/19 16/23 19/21 25/22
 25/23 26/9 27/2 27/11 27/15 28/11 29/1
 29/15 31/11 39/7 40/6

makes [4]  5/20 6/11 29/19 30/19
making [1]  16/16
management [1]  7/5
manufactured [1]  9/16
manufacturer [4]  7/8 9/20 11/23 12/11
manufacturers [4]  9/9 10/2 10/16 11/23
manufacturing [1]  12/1
many [8]  8/3 8/24 9/2 9/11 10/8 12/3 19/11
 39/14
markets [1]  21/25
Markman [26]  5/18 20/17 20/19 20/22 21/2
 21/9 21/10 21/14 21/16 21/18 26/14 27/12
 30/4 30/6 32/9 32/10 32/17 32/21 32/23
 33/8 33/10 33/16 33/17 33/22 34/21 44/9
mart [9]  1/9 3/6 4/4 4/25 10/9 20/21 25/6
 39/6 40/3
MATT [2]  2/2 3/18
matter [3]  12/8 16/3 44/19
matters [1]  16/4
may [17]  10/18 10/20 11/18 13/21 14/9 18/4
 22/9 22/10 22/17 23/20 23/25 23/25 29/3
 30/21 31/9 34/21 38/20
maybe [6]  7/9 10/24 22/16 30/9 30/9 30/10
me [23]  4/5 5/3 5/4 5/15 5/25 9/4 14/23
 16/19 22/14 27/25 30/15 33/6 34/1 34/2
 37/8 38/13 38/24 41/4 41/18 41/19 42/4
 42/10 44/9
mean [5]  17/19 23/14 26/6 31/7 43/5
means [2]  24/15 31/22
measures [1]  12/4
mention [2]  14/1 43/12
mentioned [4]  7/5 13/15 16/10 17/7
MIAMI [4]  1/3 2/18 2/21 2/21
middle [1]  23/22
MIDDLEBROOKS [2]  1/3 1/14
Midwest [10]  3/7 3/21 13/16 14/4 14/9 17/8
 17/9 17/13 18/7 18/9
might [5]  5/19 17/10 20/23 21/18 38/24
miller [4]  2/20 2/22 44/20 44/21
mineral [3]  23/11 23/11 23/12
mini [1]  21/10
minimize [2]  8/13 38/17
minute [1]  23/3
misimpressions [1]  16/14
Missouri [2]  15/10 15/11
misunderstanding [2]  15/23 15/24
mix [1]  24/10
money [1]  28/5
month [2]  33/13 33/13
months [5]  8/2 17/22 32/13 32/19 33/13
more [6]  5/21 6/7 6/17 7/10 9/18 18/5
morning [14]  3/2 3/14 3/15 3/18 3/24 4/2
 4/3 4/10 4/11 4/14 4/15 17/5 17/6 21/22
most [3]  8/9 9/7 9/8
motion [15]  5/12 13/16 13/20 15/2 15/9
 15/9 17/18 19/2 25/21 25/23 26/4 29/21
 41/17 42/5 44/8
move [4]  33/21 34/21 38/20 42/12
moving [1]  6/2
MR [11]  3/24 4/11 35/24 39/5 40/9 40/22
 40/25 41/4 41/6 41/9 41/13
Mr. [10]  7/7 9/22 12/3 13/3 15/13 20/18
 20/23 21/17 39/17 42/16
Mr. Chen [5]  7/7 9/22 12/3 13/3 15/13
Mr. Kim [3]  20/18 20/23 21/17
Mr. Rothman [2]  39/17 42/16
much [3]  11/2 20/25 38/12

Case 9:14-cv-81447-DMM   Document 36   Entered on FLSD Docket 03/25/2015   Page 50 of 53

Leadaing Edge vs. Wal-Mart, et al                    50

**M**

multiple [3] 20/14 36/10 39/21
music [1] 6/20
musical [2] 22/3 23/2
my [21] 3/22 4/5 4/13 7/8 9/18 9/19 12/14
 12/21 13/19 13/20 22/18 25/17 34/6 37/3
 37/9 37/12 37/14 40/25 41/10 43/20 44/1
mystery [2] 6/24 7/16

**N**

name [2] 11/3 22/21
named [1] 10/12
nature [1] 20/4
near [1] 14/10
necessarily [3] 17/23 31/7 40/18
necessary [6] 18/13 27/4 27/17 28/25 29/16
 41/18
necessity [1] 8/14
need [14] 5/16 8/5 14/6 18/13 21/2 26/18
 29/25 32/1 33/3 33/3 35/22 37/12 37/24
 39/4
needs [1] 37/21
NELLES [2] 2/2 3/18
never [2] 13/4 16/18
New [2] 2/13 37/11
no [14] 1/3 6/24 9/21 12/17 13/4 14/5 16/14
 18/9 28/9 36/22 37/1 42/21 42/23 42/25
non [1] 13/5
non-Atake [1] 13/5
none [1] 13/5
nonjury [1] 38/7
normal [1] 27/10
North [1] 2/6
Northern [1] 14/6
not [72]
notice [1] 39/21
NOVELTY [3] 1/6 3/4 3/13
November [1] 5/7
now [10] 10/8 12/5 14/20 20/5 23/11 24/20
 28/6 31/17 35/20 38/24
nozzle [1] 23/24
nozzles [2] 29/6 29/7
number [10] 5/1 8/22 11/20 21/11 24/4
 24/6 35/7 35/15 35/17 43/4

**O**

obviously [3] 26/10 33/19 37/12
occur [2] 7/23 20/11
occurs [1] 13/23
off [1] 37/11
office [3] 11/10 25/17 39/24
Official [2] 2/20 44/21
oil [3] 23/11 23/11 23/12
okay [12] 4/10 4/16 4/18 5/3 13/9 17/2 27/6
 33/23 39/4 41/11 41/15 44/11
once [2] 26/19 28/3
one [41] 2/3 2/6 4/19 5/12 7/7 7/9 9/18 9/21
 13/15 20/7 21/11 22/14 22/18 23/1 23/1
 24/1 24/5 24/6 24/21 24/23 25/9 27/3 28/16
 30/23 30/23 31/3 32/22 35/21 36/5 36/11
 37/17 37/17 37/23 38/6 38/16 38/19 39/3
 39/12 39/14 42/15 43/2
onerous [1] 43/7
ones [4] 5/19 11/22 19/9 22/23
only [13] 12/10 15/13 24/21 24/23 25/9
 26/21 27/25 31/2 31/15 32/18 37/23 39/2

43/11
open [3] 25/16 33/2 33/23
opposed [1] 27/13
order [10] 7/21 14/11 18/17 27/5 34/10
 43/12 43/14 43/18 44/3 44/6
ordered [1] 17/14
orders [1] 14/20
other [32] 7/4 7/9 9/2 9/23 10/1 10/14 10/19
 10/24 11/13 11/23 13/12 15/9 18/23 20/15
 22/5 23/18 26/11 27/1 28/23 29/9 30/14
 33/8 33/21 34/25 34/25 35/18 35/19 36/12
 37/17 41/23 42/10 43/11
others' [1] 21/6
ought [1] 5/9
our [14] 4/7 15/6 18/6 20/12 20/20 21/25
 24/23 26/6 26/9 29/23 30/23 32/13 34/12
 42/9
out [24] 4/18 5/23 8/1 8/13 11/24 14/12
 16/8 16/12 16/13 26/24 28/21 28/22 28/22
 29/12 29/15 30/11 32/5 32/5 33/24 35/21
 37/1 43/22 44/3 44/7
over [3] 11/25 11/25 16/2
own [2] 25/17 43/15
owned [2] 13/3 40/4
owner [2] 13/4 39/25

**P**

P-R-O-C-E-E-D-I-N-G-S [1] 3/1
page [6] 15/25 16/2 16/3 23/1 23/20 33/25
Pages [1] 1/10
PALM [2] 1/7 44/23
papers [1] 42/1
Park [2] 2/13 2/13
part [5] 15/24 22/24 22/24 34/21 38/7
parte [1] 15/6
parter [1] 4/13
participate [1] 41/22
participated [1] 40/21
particularly [2] 17/20 38/16
parties [12] 5/24 7/20 8/4 8/10 15/22 16/9
 16/15 20/2 27/16 28/17 32/7 35/12
parties' [1] 19/14
parts [4] 6/23 26/23 26/25 29/3
party [1] 40/13
patent [44] 3/3 6/18 6/22 6/22 7/2 7/6 7/15
 9/17 10/1 10/6 12/16 12/19 12/20 12/22
 12/23 13/2 13/3 13/6 15/14 20/15 21/24
 22/1 22/6 22/13 22/22 24/1 24/2 24/8 24/20
 24/22 26/21 26/22 27/1 27/24 28/21 28/22
 29/3 29/4 31/24 37/20 39/8 39/24 40/5
 42/10
patents [8] 9/24 12/13 12/15 12/16 13/2
 39/23 39/25 40/4
Patton [2] 2/16 4/13
pending [1] 33/20
people [5] 3/9 5/18 5/22 17/21 30/5
per [2] 8/24 35/10
per-unit [1] 8/24
percent [2] 31/7 31/19
perhaps [1] 18/24
period [1] 8/12
personal [7] 5/13 5/13 11/12 11/19 13/16
 13/24 17/15
personally [1] 25/15
persuasive [1] 38/24
pertain [1] 39/9
phase [1] 20/16

phone [4] 3/9 4/7 4/16 6/7
picking [2] 32/4 32/5
picture [3] 15/8 19/8 23/9
Plaintiff [25] 3/4 5/4 5/25 6/25 7/6 7/7 7/12
 7/22 8/5 8/16 10/4 10/5 14/10 15/4 18/12
 19/17 21/6 22/9 23/13 27/2 27/15 33/5
 34/13 35/8 42/13
Plaintiffs [6] 1/7 1/18 3/10 3/12 16/3 33/25
Plaintiffs' [13] 7/3 17/10 22/24 23/8 24/17
 30/18 30/21 31/1 31/9 31/13 32/4 35/15
 39/19
plan [2] 15/22 16/6
platform [1] 29/8
play [1] 5/24
plays [1] 6/20
Plaza [1] 2/3
please [2] 3/2 22/17
pleases [1] 39/7
point [17] 7/7 7/16 11/9 14/15 15/1 25/5
 36/14 36/25 36/25 37/3 37/10 37/15 38/12
 38/19 40/2 40/6 43/13
points [1] 23/10
portion [1] 29/8
position [16] 13/20 20/12 22/13 23/8 25/3
 25/5 25/6 25/8 25/12 30/16 30/18 30/18
 31/17 32/14 34/12 39/17
positions [3] 33/6 34/22 38/4
possible [2] 18/2 19/12
potential [2] 10/24 13/23
potentially [1] 36/13
precedent [2] 29/18 32/16
preclude [1] 30/3
prefatory [1] 39/8
prefer [2] 15/24 36/15
preference [1] 33/19
prejudiced [1] 36/13
preliminary [2] 29/14 33/9
prepare [1] 43/14
pretrial [1] 7/23
pretty [4] 9/11 11/2 20/25 34/9
previously [1] 9/23
principally [1] 9/16
principles [1] 27/3
prior [2] 7/23 20/3
Pro [1] 4/6
probably [11] 4/19 4/24 14/22 17/19 17/24
 18/1 19/18 32/12 34/6 34/13 34/14
problem [2] 28/6 35/22
proceed [7] 7/19 14/7 16/21 26/1 27/20
 32/17 33/22
proceeding [1] 42/6
proceedings [4] 40/21 40/22 44/14 44/18
process [3] 18/10 26/17 27/10
producing [1] 40/15
product [20] 6/18 6/22 7/3 7/8 9/8 9/20
 12/15 15/14 15/16 21/5 21/25 24/20 24/21
 24/23 25/2 29/2 31/10 31/13 31/14 33/4
production [3] 35/5 42/17 42/22
products [19] 7/2 9/15 10/3 10/14 10/19
 20/25 21/6 21/7 25/8 25/16 25/17 26/22
 30/12 36/3 36/5 36/6 36/19 38/25 39/2
progress [2] 38/20 44/2
promote [1] 6/14
proper [1] 27/25
properly [1] 26/11
proposal [1] 19/17
propose [3] 7/22 34/12 43/18

**P**

proposed [7]  8/1 20/14 20/21 26/9 29/23
 35/3 35/5
proposing [1]  33/11
prospect [1]  5/19
provide [6]  8/21 10/11 18/14 22/10 39/20
 43/6
provided [2]  26/6 41/2
pull [2]  26/24 28/20
purchased [2]  9/19 9/19
purchasers [1]  7/13
purpose [2]  12/22 28/1
purposes [5]  6/10 6/16 12/21 16/5 41/14
pursue [1]  12/5
pursuing [1]  12/21
push [1]  19/3
put [4]  18/19 26/7 26/8 36/20

**Q**

question [6]  9/13 11/6 25/11 30/24 33/9
 39/23
questionable [1]  40/4
questions [1]  13/11
quickly [2]  9/4 18/17
quite [2]  18/17 25/19

**R**

raise [1]  8/7
raised [8]  7/4 19/15 19/17 20/6 20/16 20/18
 42/16 42/16
RALPH [3]  2/10 4/5 39/5
ran [1]  39/15
rather [4]  19/20 21/13 35/16 38/15
Raton [1]  1/20
reaction [1]  34/6
read [2]  5/6 22/3
real [1]  41/24
really [11]  5/16 21/24 22/1 24/2 24/22
 30/24 32/5 36/14 38/11 38/22 38/25
reason [9]  8/11 16/23 17/20 24/16 25/1 30/6
 36/23 42/21 42/23
reasonable [3]  8/19 8/25 43/9
reassignment [1]  39/22
recited [1]  31/2
recites [1]  23/1
record [1]  39/16
refer [1]  22/25
reference [1]  24/6
referenced [1]  24/5
referred [1]  9/17
reflect [1]  39/24
regard [5]  15/21 18/6 20/19 40/3 40/14
regarding [2]  35/2 36/24
relate [1]  12/15
related [3]  22/5 23/19 30/22
relates [4]  6/18 9/23 13/1 14/16
relevant [1]  39/14
remarkable [1]  6/7
remember [1]  7/10
render [1]  25/25
repeatedly [1]  39/19
report [4]  7/5 15/21 16/6 20/20
Reported [1]  2/20
Reporter [2]  2/20 44/21
reports [1]  16/1
represent [2]  17/7 41/1

representation [4]  16/16 21/6 31/11 36/3
representative [1]
representatives [1]  11/11
represented [1]  16/15
representing [4]  3/25 4/4 4/12 39/5
request [7]  17/16 35/10 35/12 35/13 35/15
 37/5 42/17
requesting [1]  14/10
requests [10]  18/16 35/4 35/8 35/15 35/17
 42/21 42/22 42/23 43/3 43/4
require [1]  24/14
required [2]  12/4 26/7
requirement [3]  11/13 12/20 42/25
requirements [1]  27/12
requires [4]  24/18 24/22 30/24 31/3
rescheduled [1]  17/17
resolution [3]  6/15 10/21 34/5
resolve [7]  5/11 10/22 10/23 11/20 11/21
 11/22 14/13
respect [13]  8/16 14/9 14/24 15/2 15/21
 19/15 20/2 20/17 20/22 35/3 35/4 36/1 36/2
responded [1]  29/25
response [2]  15/6 18/8
responses [1]  18/16
result [1]  10/4
retailer [5]  10/9 10/12 10/19 11/3 11/5
retailers [1]  9/11
reversion [1]  39/22
review [2]  13/20 29/14
reviewed [1]  7/25
right [13]  4/23 19/7 21/21 23/5 26/13 28/4
 28/6 28/18 34/15 35/20 40/24 44/3 44/8
RMR [2]  2/20 44/21
road [1]  21/18
rocket [1]  32/1
Room [2]  2/21 44/22
ROTHMAN [7]  1/18 1/19 3/11 3/12 6/4
 39/17 42/16
Rothschild [1]  32/18
round [1]  29/14
row [1]  23/22
royalty [1]  8/25
Rule [1]  6/16
ruled [1]  32/15
rules [3]  42/22 43/1 43/5
rush [1]  16/12
rushed [1]  43/16
RUSSELL [1]  2/15
RYERSON [2]  2/11 4/8

**S**

said [5]  12/9 23/23 30/2 37/16 39/18
Salami [1]  13/22
sale [1]  10/7
same [15]  10/18 15/14 17/16 19/22 20/25
 21/1 21/8 21/16 25/2 25/8 25/12 33/25
 37/18 39/2 44/2
sample [1]  22/1
satisfy [1]  11/12
save [2]  21/18 28/4
saw [2]  42/21 42/23
say [6]  5/8 15/25 16/17 29/20 33/3 33/24
saying [5]  16/20 25/24 27/21 30/8 31/7
says [6]  23/1 23/7 23/22 24/17 32/4 40/22
schedule [16]  7/22 8/1 8/12 17/17 18/13
 18/21 19/3 27/17 27/19 28/2 33/14 33/15
 34/3 40/8 43/23 44/2

scheduling [9]  1/14 4/21 7/21 15/21 16/1
 17/14 28/10 33/8 34/25
SCHNEIDER [4]  1/19 1/19 3/12 3/12
science [1]  32/1
seal [1]  42/7
sealed [1]  42/5
search [1]  39/23
seated [2]  3/2 22/19
second [1]  16/2
Secondly [1]  14/14
section [2]  16/5 20/4
see [11]  6/1 16/5 25/17 31/6 31/14 31/16
 33/5 33/11 38/3 39/3 43/10
seem [2]  5/7 38/23
seemed [1]  38/6
seems [2]  15/1 37/8
seen [2]  10/15 40/18
SELITTO [11]  2/10 4/6 39/5 39/5 40/9
 40/22 40/25 41/4 41/6 41/9 41/13
sell [2]  9/8 9/11
selling [1]  15/17
sense [11]  6/11 8/3 16/24 19/21 20/12 27/2
 27/15 28/11 29/1 29/19 30/19
separate [12]  19/20 24/14 24/19 24/19
 24/22 30/25 31/2 35/7 35/22 36/15 37/24
 38/23
separately [2]  26/25 37/21
serve [1]  42/20
served [1]  35/6
set [12]  4/20 5/6 7/24 8/1 8/2 14/21 18/22
 35/5 35/13 35/22 38/19 43/2
setting [1]  14/21
settle [3]  6/1 8/19 8/19
settlement [2]  8/16 14/25
settlements [2]  4/22 8/24
settling [2]  14/15 34/19
sever [1]  38/21
several [3]  3/3 10/11 28/21
shape [1]  16/25
shifting [1]  13/23
shoes [1]  18/19
shooting [3]  24/2 24/8 24/11
shoots [1]  6/19
short [2]  18/17 34/10
should [8]  5/16 6/2 6/2 27/9 30/11 32/6 32/7
 42/24
showing [3]  39/20 42/7 43/25
sides' [1]  30/15
significant [3]  34/6 38/4 38/7
similar [9]  6/12 7/3 8/8 21/8 25/13 31/12
 32/19 36/4 36/6
similarly [1]  35/12
simple [1]  31/25
simply [1]  11/19
since [1]  42/21
single [6]  28/12 28/12 30/23 31/3 35/5
 35/13
sit [1]  36/12
situation [6]  11/16 12/2 12/12 13/22 19/25
 38/10
situations [1]  8/10
six [3]  4/19 5/16 36/6
slight [1]  15/23
slightly [1]  14/22 15/6
small [1]  31/7
smaller [1]  36/21
so [55]

**S**

sold [1]  8/23
some [25]  3/9 5/7 5/9 5/18 5/22 5/23 6/13
 7/5 10/18 12/8 22/10 22/15 22/23 29/15
 30/6 34/18 36/4 36/21 36/21 36/21 36/22
 39/7 41/17 42/10 42/11
somebody [1]  40/15
something [9]  5/4 8/8 14/2 21/24 25/3 30/13
 30/15 33/6 44/10
Sometimes [1]  30/5
somewhat [2]  15/14 15/15
Sony [3]  32/18 32/18 32/24
sorry [4]  23/4 23/25 24/20 38/5
sort [1]  20/13
sought [1]  16/5
sounds [3]  18/4 25/19 25/21
South [1]  2/17
SOUTHERN [1]  1/2
spare [1]  38/8
speak [2]  20/18 37/10
speakers [1]  6/21
speaking [2]  21/23 40/23
specific [4]  31/25 36/1 36/4 37/20
specifically [1]  10/16
specified [2]  29/4 29/4
Spectra [6]  2/2 3/19 4/1 10/10 17/8 35/25
speedy [1]  6/15
spend [2]  32/7 38/18
Spire [1]  4/13
spoke [1]  7/25
spray [1]  29/7
Squire [1]  2/16
St [1]  15/12
stage [1]  28/23
staging [1]  30/4
standards [1]  40/19
standing [1]  5/22
standpoint [5]  18/6 19/10 19/13 19/14 40/5
start [3]  5/15 5/25 6/2
starting [2]  5/4 33/18
State [1]  14/5
STATES [7]  1/2 1/15 2/20 11/11 11/11
 11/13 44/22
stay [2]  33/20 34/19
stays [1]  19/4
step [2]  6/17 30/13
steps [1]  29/4
Steve [1]  4/13
STEVEN [1]  2/16
still [5]  5/22 27/23 36/4
stop [1]  9/5
STORES [1]  1/9
straightforward [2]  6/23 29/3
streams [1]  24/7
Street [1]  44/22
STROEVER [2]  2/12 4/8
strong [1]  42/7
stuck [1]  35/21
subject [3]  28/16 28/17 33/15
submission [1]  27/18
submit [2]  29/13 44/4
submitted [2]  15/22 22/25
subsequent [2]  11/14 28/24
substantially [1]  7/3
such [1]  42/25
sue [3]  11/21 14/4 14/6

sufficiency [2]  15/3 15/4
sufficient [1]  11/12
sufficiently [1]  6/12
suggest [3]  16/24 17/21 30/14
suggested [2]  26/20 27/13
suggesting [2]  29/11 30/3
suggests [2]  16/7 16/8
suing [1]  11/7
summary [1]  30/5
supplier [1]  10/13
suppliers [1]  10/14
sure [6]  5/10 9/5 13/13 14/25 22/18 40/13
surprised [1]  9/12
susceptible [2]  19/24 37/25
suspect [1]  20/16
suspected [1]  17/10
system [1]  31/23

**T**

table [1]  12/7
take [10]  6/17 11/7 12/4 14/10 18/16 27/22
 29/12 29/15 30/13 33/7
taking [3]  13/20 23/13 39/17
talk [8]  5/18 18/23 19/8 30/14 33/5 33/25
 41/16 42/8
talked [1]  11/9
talking [7]  9/5 19/24 23/3 26/16 28/10
 28/19 40/8
tank [16]  22/2 22/3 22/7 23/2 23/6 23/9
 23/12 23/15 23/17 24/3 24/5 24/12 29/6
 29/6 31/18 31/19
Target [8]  2/2 3/6 3/19 3/23 3/25 10/9 17/7
 35/25
Target's [1]  25/10
telephone [1]  4/12
tell [12]  5/4 5/15 5/25 22/14 33/6 34/1 34/2
 38/12 41/18 41/19 43/22 44/9
ten [10]  5/16 17/22 34/13 34/17 35/9 35/10
 35/16 42/18 42/20 42/24
term [9]  14/10 23/14 23/18 23/19 28/16
 30/7 31/19 31/25 39/15
terminated [3]  7/11 12/3 39/18
termination [1]  39/21
terms [32]  6/22 7/1 7/17 7/18 8/20 19/9
 20/9 20/22 21/1 21/11 21/12 21/13 21/16
 22/4 22/6 24/13 26/14 26/17 27/1 27/22
 28/21 28/23 29/15 30/22 32/22 32/23 33/10
 34/5 34/25 36/19 38/4 42/8
testifying [1]  32/2
than [10]  8/2 11/13 14/23 15/16 19/20
 21/13 27/7 35/16 35/18 38/16
thank [10]  13/8 13/14 15/20 17/3 17/4 23/5
 33/1 34/7 44/12 44/13
Thanks [1]  44/11
that [301]
that's [26]  3/19 4/9 9/17 11/5 13/1 13/15
 14/25 16/19 20/14 23/9 23/9 23/14 23/15
 24/5 24/25 25/3 27/6 28/19 29/25 30/2 30/7
 36/15 41/13 43/2 43/5 43/13
their [13]  8/1 10/6 13/20 13/21 14/12 15/20
 16/25 17/15 17/18 18/20 22/9 25/17 41/2
them [20]  4/21 5/22 9/8 9/9 9/12 11/21 12/1
 12/9 14/6 14/21 14/25 17/25 18/2 20/7 25/3
 25/18 26/12 29/15 37/10 44/1
then [21]  9/4 14/5 16/2 18/16 23/18 25/17
 26/12 26/17 28/10 28/24 29/16 30/20 32/22

32/23 33/5 33/6 34/13 37/1 37/15 38/21
 42/20
theory [2]  39/8 40/5
there [68]
there's [1]  37/1
therefore [1]  7/14
these [31]  4/18 6/15 8/13 9/2 9/7 9/10 9/11
 10/6 10/8 11/2 11/24 14/23 15/22 16/24
 17/22 17/25 20/25 22/17 24/13 26/14 27/9
 28/3 29/15 29/19 29/25 32/4 33/10 39/21
 40/17 43/15 43/20
they [56]
thing [1]  15/18
things [7]  5/21 18/1 29/9 38/20 42/6 44/7
 44/10
think [42]  4/21 5/5 5/7 5/9 5/23 6/5 7/16
 7/18 8/8 9/10 13/19 15/11 16/15 16/22 19/5
 19/18 20/8 20/10 21/5 21/12 21/15 22/7
 23/15 24/3 25/11 26/3 26/16 30/10 31/20
 32/2 33/7 33/8 33/12 33/16 34/4 34/8 34/9
 35/1 36/17 39/18 40/2 40/9
this [73]
Thornburg [2]  2/6 3/25
thorough [1]  12/18
those [28]  3/8 5/3 10/12 10/16 12/4 12/6
 12/16 14/20 15/4 16/14 16/21 16/23 19/23
 20/6 21/19 27/14 27/23 28/15 28/22 32/23
 35/8 37/8 38/8 38/9 39/25 41/21 41/23 42/6
though [5]  11/17 15/13 15/19 29/12 31/1
thought [3]  16/7 21/10 21/17
thousands [1]  32/8
three [6]  4/19 4/22 8/1 12/14 21/11 26/17
through [11]  6/21 18/10 18/17 18/20 19/2
 21/13 24/2 27/10 32/7 32/8 39/15
thus [1]  6/24
TigerDirect [1]  3/7
tilt [1]  31/15
tilted [1]  23/9
time [13]  5/7 8/5 8/12 8/15 9/21 17/21
 19/22 20/7 21/18 28/5 38/17 40/2 43/23
times [2]  5/20 12/16
tiny [1]  23/12
title [1]  22/3
today [8]  4/24 7/9 17/13 30/10 39/4 39/24
 40/8 44/5
together [11]  19/6 24/10 27/4 29/10 30/9
 36/12 36/20 36/23 37/6 37/9 41/19
told [2]  16/18 38/13
tomorrow [1]  15/5
too [1]  22/23
towards [2]  23/20 38/21
Trading [2]  3/7 3/21
TRANSCRIPT [1]  1/14
transcription [1]  44/18
transfer [1]  15/9
translations [2]  39/13 40/18
Traurig [2]  2/12 4/4
tremendous [1]  15/19
tremendously [1]  15/15
trial [24]  5/6 5/9 8/1 14/21 19/16 19/24 20/9
 20/12 35/21 36/5 37/7 37/9 37/14 37/17
 37/18 37/24 38/15 38/16 38/19 38/21 39/3
 41/20 42/1 43/21
trials [4]  19/21 20/14 35/23 36/15
tried [3]  22/13 36/23 37/21
try [4]  6/3 13/10 17/22 41/17
TSAN [4]  1/6 3/13 14/17 14/18

## T

TSAN-YAO [4]  1/6 3/13 14/17 14/18
turn [1]  16/2
turns [3]  16/8 16/13 36/25
two [25]  4/19 10/9 16/10 17/25 21/11 22/4
 22/6 24/13 24/14 24/18 24/19 24/22 28/7
 28/8 30/22 30/25 31/2 32/22 33/6 33/13
 39/12 39/22 43/21 44/7 44/9

## U

U.S [7]  10/2 10/2 12/15 13/2 13/3 13/6 41/2
ultimately [1]  18/11
under [10]  6/15 8/22 9/24 12/23 13/6 13/22
 26/1 27/12 29/19 43/1
underlying [1]  39/9
understand [12]  3/9 11/16 12/19 17/20
 18/18 18/19 26/2 27/5 27/21 29/11 33/20
 36/24
understanding [3]  13/19 15/19 37/3
understands [1]  25/20
understood [4]  11/5 19/5 31/4 43/24
unique [1]  25/3
unit [1]  8/24
UNITED [7]  1/2 1/15 2/20 11/10 11/11
 11/13 44/22
units [1]  8/23
unlikely [1]  42/7
unlimited [3]  35/7 35/14 35/17
unnecessarily [1]  10/25
unrelated [1]  10/1
until [1]  30/5
up [8]  16/22 18/22 21/8 24/18 28/7 28/7
 34/21 38/16
upon [4]  7/21 12/23 13/19 27/11
upside [1]  23/10
upward [1]  23/23
urge [1]  18/23
URY [2]  1/22 3/17
us [8]  8/3 8/21 13/17 21/5 39/20 41/2 42/15
 43/14
using [1]  8/14

## V

valid [1]  14/4
validity [2]  19/22 20/3
valuable [1]  8/14
various [1]  12/16
vein [1]  23/22
Venetian [1]  13/22
versus [1]  14/19
very [17]  12/18 14/10 16/1 16/1 18/12 21/7
 21/11 23/13 31/12 31/25 31/25 32/3 32/19
 32/25 38/12 38/23 40/3
Vice [1]  4/6
view [2]  10/13 30/23
vision [1]  31/1
volume [1]  27/8

## W

Wacker [1]  2/6
wait [2]  23/3 30/5
waiting [1]  18/15
waive [2]  37/14 37/15
waived [1]  37/9
WAL [8]  1/9 3/6 4/4 10/9 20/21 25/6 39/6
 40/3

WAL-MART [8]  1/9 3/6 4/4 10/9 20/21
 25/6 39/6 40/3
Walmart [1]  2/9
want [27]  5/8 9/5 13/10 14/14 15/7 15/18
 15/23 16/19 16/24 17/10 17/21 19/3 19/11
 28/20 30/6 30/13 38/17 39/7 39/11 39/16
 42/8 42/14 43/6 43/9 43/14 43/17 44/5
wanted [8]  14/1 17/9 26/9 32/17 40/6 41/13
 42/18 42/19
wanting [2]  18/19 28/20
wants [1]  33/21
was [24]  7/11 10/5 12/25 13/7 13/21 15/19
 15/19 15/23 16/7 16/13 19/12 19/16 20/8
 20/10 21/10 32/18 32/25 34/8 35/4 37/5
 38/14 40/2 42/19 43/11
wasn't [1]  16/14
water [4]  6/20 22/2 22/3 23/2
way [4]  16/25 24/7 29/1 30/1
we [173]
week [2]  34/13 37/12
weight [1]  29/7
welcome [1]  25/18
well [22]  5/24 6/13 8/18 10/6 11/9 12/14
 18/23 20/16 20/18 25/10 25/24 26/5 28/4
 30/2 31/4 33/2 36/2 37/5 37/16 41/11 42/12
 43/5
were [32]  8/4 9/23 12/3 12/16 14/22 16/12
 16/20 19/18 20/10 20/25 26/11 29/5 34/24
 35/1 38/7 39/17 43/15
weren't [1]  12/6
WEST [2]  1/7 44/23
what [42]  7/17 8/9 9/9 9/25 10/10 12/12
 12/19 13/21 14/23 15/10 15/25 16/20 19/23
 19/25 21/10 26/9 26/13 26/20 26/24 27/13
 27/21 28/17 28/19 28/20 29/11 30/2 30/2
 32/19 33/11 33/16 34/2 35/3 35/22 36/17
 37/15 38/3 38/12 39/11 40/1 42/19 43/2
 43/5
whatsoever [1]  14/5
wheel [1]  23/23
when [8]  18/10 22/9 24/9 36/10 40/22 41/18
 42/4 42/25
where [17]  5/5 8/10 9/8 9/15 10/20 12/11
 12/22 12/23 13/22 14/25 22/14 28/11 32/1
 32/9 32/16 38/6 43/10
whether [15]  7/13 13/24 20/3 20/3 20/8
 22/5 28/12 30/11 30/18 30/24 33/3 33/9
 37/22 38/22 42/4
which [30]  4/25 5/10 6/8 7/2 8/1 11/17 14/7
 14/18 15/3 15/5 16/4 18/14 23/11 23/19
 24/1 24/3 24/3 24/11 24/14 24/17 24/19
 25/21 27/13 32/18 34/22 35/6 37/15 39/23
 40/17 42/24
while [4]  29/3 33/22 36/3 36/6
who [17]  5/3 7/12 8/18 9/18 10/3 10/16
 10/18 14/15 14/15 20/20 21/7 22/19 22/21
 25/6 25/19 37/24 40/4
whole [10]  10/22 10/23 15/7 21/12 24/15
 24/25 26/21 27/24 29/17 33/12
whom [1]  4/6
whose [1]  22/21
why [15]  16/23 20/14 21/2 25/1 27/5 32/6
 32/7 35/20 35/22 36/15 36/23 37/17 39/3
 41/13 42/23
will [36]  3/22 6/12 8/6 8/8 8/17 12/10 14/10
 15/4 15/5 18/1 18/1 18/14 21/8 21/17 22/16
 29/16 29/16 30/20 32/13 33/7 35/13 37/17

40/7 40/9 40/15 41/11 41/23 42/12 43/9
 43/15 43/18 43/22 43/22 44/2 44/3 44/6
willful [1]  36/9
willfulness [6]  36/12 36/25 37/1 37/4 38/24
 38/25
WILLIAM [1]  2/12
Willie [1]  4/8
willing [2]  14/2 18/12
willingness [1]  8/19
wish [2]  11/20 12/6
wishes [2]  16/21 18/22
within [3]  29/8 29/8 29/8
without [4]  9/25 14/18 42/6 43/25
won't [3]  12/9 17/19 41/12
word [2]  16/1 16/2
work [4]  19/5 41/19 43/18 44/3
works [3]  29/2 30/1 33/4
worthwhile [1]  19/13
would [62]
wouldn't [3]  9/10 11/21 26/12
written [1]  40/10
wrong [1]  28/6

## Y

YAO [4]  1/6 3/13 14/17 14/18
yeah [3]  22/12 31/5 35/10
Year [1]  37/11
years [4]  7/7 9/21 12/4 39/18
yes [11]  3/10 4/24 11/7 13/8 18/25 21/22
 22/15 25/11 28/15 34/16 41/6
yesterday [1]  16/12
yet [6]  4/17 4/21 17/25 18/8 22/6 44/1
you [126]
your [83]